RAWLS, Judge.
Defendants, the Tax Collector and Tax Assessor of Volusia County, joined by the Comptroller of the State of Florida and the County of Volusia, a political subdivision of the State of Florida, appeal from an adverse decree entered on the pleadings.
This cause is an old friend[1] and a review of its history is necessary to reach the salient points on appeal. On November 16, 1960, Daytona Beach Racing and Recreational Facilities District (hereinafter termed District) filed its complaint seeking a judicial declaration as to the legality and validity vel non of ad valorem taxes levied *654 upon certain property owned by it and an order enjoining the collection of such taxes. A second amended complaint was filed on March 28, 1962, to which C. S. Paul, as Tax Collector, and Warren Jackson, as Tax Assessor, for Volusia County filed a Motion to Dismiss, Motion to Strike and Answer. A few days later Ray E. Green, as Comptroller of the State of Florida, filed a Motion to Dismiss, and Volusia County filed its Answer. On May 4, 1962, the trial judge entered an order granting the Defendants’ Motion to Dismiss Plaintiffs’ Second Amended Complaint, stating specifically therein that the “defendants’ motion to strike is not ruled upon at this time.” At this stage of the pleadings, the allegations of the Second Amended Complaint are to be considered as true for the purpose of testing Defendants’ Motion to Dismiss, and the trial judge, being of the opinion that said Amended Complaint viewed in this light failed to state a cause of action, dismissed same.
It was from the foregoing order of dismissal of Plaintiffs’ Complaint that the first appeal was taken to this court. The late Judge Sturgis authored an extensive opinion sustaining the trial judge’s action. Plaintiff instituted certiorari to the Supreme Court which, in an exhaustive opinion, found that the trial judge’s order ana this court’s decision were erroneous. Upon remand, Defendants Tax Assessor and Tax Collector by motion sought leave of the trial court file an Amended Answer, which motion was denied. Plaintiffs’ motion for a decree on the pleadings was granted by the trial judge who found, “The land and premises described in plaintiffs’ Second Amended Complaint * * * are exempt from ad valorem taxation by specific authority of Section 13 of Chapter 31343, Special Acts of 1955 of the Florida Legislature, which exemption has been confirmed by the Supreme Court of Florida in its opinion in this cause, on appeal, filed June 30, 1965.[2] * * * That so long as said property is devoted to the uses specified in the lease between Plaintiff, DAY-TONA BEACH RACING AND RECREATIONAL FACILITIES DISTRICT, and DAYTONA INTERNATIONAL SPEEDWAY CORPORATION dated November 8, 1957, and until the repeal by the Florida Legislature of the aforesaid specific legislative tax exemption, all defendants are enjoined from assessing or collecting ad valorem taxes against said property. * * ” The instant appeal is from this decree.
The Appellants, Tax Collector and Tax Assessor, have posed two salient points as follows: 1. Did the Circuit Judge abuse his discretion by denying Appellants’ Motion for Leave to Amend ? 2. Did the Circuit Judge properly enter decree on the pleadings without a trial on the issues?
Omitting the formal parts, the Answer of Appellants, Tax Assessor and Tax Collector, alleged:
“1. That the plaintiff City is the owner of the land described in paragraph (1) of the second amended complaint, that the lease referred to was entered into between the City and the District on December 29, 1955, and that a lease was entered into between the District and the Daytona International Speedway Corporation on November 8, 1957, are admitted; and further answering said paragraph (1) said defendants allege:
“a. Said lease between the District and the City dated December 29, 1955, provided (on page 5 thereof) that the lessee should pay all taxes, assessments and levies taxed, charged or assessed against the demised premises, or upon any buildings or improvements thereof. Said lease further provided that the City should receive $4,750.00 yearly rent upon the 374 acres so leased for a term of 99 years, said lands now being of the reasonable value of $3,000.00 per acre, or a conservative value, without improve *655 ments, of $1,125,000.00. Said lease also provided that the City should receive as additional rent a certain prescribed percentage of the earnings of Daytona Beach Motor Speedway, Inc., or its successors; but these provisions were inexplicably eliminated by a modification of lease dated February 7, 1958, adopted by the commission of said City and approved by the city attorney thereof, who was at that time also attorney for the Daytona Beach Motor Speedway, Inc. and the Daytona International Speeedway Corporation and who held 260,000 shares of stock therein.
“b. In the lease between the District and the Daytona International Speedway Corporation dated November 8, 1957, extending for 50 years with a right to renew for 25 years, the officers of said District did improvidently agree that
‘The District covenants and agrees that it will hold the Corporation (the lessee) harmless from any and all liability for real property taxes, if any, assessed, levied or imposed upon or with respect to the lands herein let and demised to the corporation.’
“2. That the District is the owner of the parcel of land described in paragraph (2) of the second amended complaint is admitted.
“3. Said defendants admit that the Florida legislature, by Chapter 31343, Special Laws of 1955, undertook to create the District and prescribe its powers. With respect to Section 13 and Section 17 of said Chapter 31343, said defendants allege that the provisions in said Section do not provide that the use by the District of the lands leased from the City constitute a municipal purpose. Further answering, said defendants say that Section 13, insofar as it purports to exempt the property of the District, is void and in contravention of Article 3, Section 20, of the Florida Constitution, providing that the legislature shall not pass special or local laws relating to the assessment and collection of taxes for state and county purposes, and is also in contravention of Article 16, Section 16 of the Florida Constitution.
“4. Said defendants admit that the purpose of said legislative act was for the District to construct a speedway and to' defray the costs thereof by the issuance of bonds which were validated by the Supreme Court of Florida, which construction so financed was considered to be for a public purpose; but neither the circuit court nor the Supreme Court held that the construction or use of said racing facility was a municipal purpose. The second amended complaint and the exhibits referred to show on their face that the contract and project referred to in the Supreme Court’s opinion and in the Circuit Court’s Final Decree are not the same as the present operation and the lease between the District and the International Speedway Corporation involved in this cause.
“5. Answering paragraph (5) of the second amended complaint, said defendants allege as follows:
“a. That the District was unable to sell its bonds or otherwise acquire funds with which the speedway facility is denied. According to a public statement issued by the chairman of said District, the District had a guarantee from its fiscal agents that the bonds would be sold thus providing the funds for the construction contemplated by said legislative act. The handling of the District’s affairs from its inception indicates a purpose on the part of the District’s officers to vacate their public duties and responsibilities and to transfer the construction and operation of the speedway facility to a private corporation for profit instead of building it and maintaining control of it as a public enterprise. By so vacating their duties and responsibilities by the District officers as aforesaid, it would appear that the District no longer serves any useful purpose and that the payment of rent by the lessee (Daytona International Speedway Corporation) to the District to be used for expenses and attorneys fees is a need *656 less expenditure of public funds. Accordingly, the corporation could, at greater economy to the public, lease directly from the City which could pay the taxes justly due Volusia County without burden to the City.
“b. The said lease from the District to the Daytona International Speedway Corporation is simply a subterfuge, an attempt to provide a tax shield for a purely private enterprise for profit, and contrary to the inhibitions of Article IX, Section 10 of the Florida Constitution with respect to any district lending its credit to any corporation. This is demonstrated poignantly by a statement made on August 9, 1961, by the president and majority stockholder of the Daytona International Speedway Corporation, to-wit:
Tf I had the union stuffed down my throat, I would plow up my Daytona Beach track and also the other tracks I am part owner of.’
“c. Although the cost to the lessee corporation of constructing the racetrack was only approximately $1,000,000.00, said lease of November 8, 1957, between the District and said corporation, provided that the District may terminate the lease at the end of the twentieth year by paying to the corporation a sum equal to ten times the gross income of the corporation from all activities, which on the basis of the 1960 earnings of said corporation, would be approximately $7,000,000.00.
“d. Said defendants deny that the District does or may use said facility for all proper public uses and purposes for periods aggregating at least three months in each fiscal year during the term of said lease, and allege that said lease provides that the District may use said facilities for periods aggregating at least three months only:
‘ * * * on dates and for terms when the facility or any such part thereof de- . sired by the District is not being used by the Corporation, and the use of any such part of the facility on any such date or for any such term does not unreasonably interfere with or conflict with the Corporation’s plans therefor or use thereof.
‘The District shall have no right to use any such part of said facility for such public uses and purposes on any date or during any period or term when the facility or such part thereof is being used by the Corporation under and pursuant to the terms hereof, even though the total use made of the facility by the District during a particular fiscal year in the aggregate totals less than three months.’
******
‘The District shall not use nor permit any part of the facility to be used for motorized races, motorized exhibits, motorized exhibitions and displays, and motorized shows, including but not limited to motor vehicular races, motor vehicular thrill shows and other motor vehicular attractions and exhibitions, contests, demonstrations and events of like nature, of every kind and description. * * *
‘It is fully understood and agreed that any dates or uses requested by the District which conflict with events or uses scheduled or planned by the Corporation may be rejected by the Corporation by written notice to' the District given on or before the expiration of 3 months after such request is received from the District.’
“e. Said defendants deny that the racing activities, industrial tests, and the selling of food, intoxicating beverages and other items conducted upon the City’s property by said private corporation purely for purposes of profit constitute a public purpose any more than the operation of the dog racing track or the jai alai fronton immediately adjacent to said racing facility, both of which are assessed for taxes by Volusia County.
“f. The Daytona International Speedway Corporation in a public offering of its capital stock by a prospectus dated August *657 1, 1958, as shown by a statement of certified public accountant therein, valued the leasehold from the plaintiff recreational facilities district at $1,685,792.00.
“6. Answering paragraph (6) of the second amended complaint, said defendants deny that the property taxed is being used for educational and scientific purposes entitling the defendant city to exemption from taxation. The testing alleged is obviously for profit, and is not alleged to be the exclusive use of the taxed property.
“7. Answering paragraph (7) of the second amended complaint, said defendants say that the recreational facilities involved in this cause, conducted for private profit as shown in plaintiffs’ pleadings, have not promoted economic, commercial and residential development or brought tourist business to the area affected any differently than other facilities such as the dog track, jai alai fronton, and other activities, all of which are taxed without question or controversy.
“8. Answering paragraph (8), subpara-graph (a) of the second amended complaint, said defendants allege that the 1960 county taxes upon the aforesaid leased City real estate are $11,500.00. The said defendants deny the allegations in subparagraph (b) thereof and allege that no taxes were assessed for 1960 against real estate to which the District holds title in fee simple.
“9. Answering paragraph (9) of the second amended complaint, said defendants say that the District’s land is taxable, but the assessor did not wish to challenge the validity of Chapter 31343 with respect to the land owned by the District.
“10. Answering paragraph (10) of the second amended complaint, said defendants allege that any purported recognition by the Board of Commissioners of Volusia County cannot legally convert any activity into a public purpose, and at no time has any action of said Board of County Commissioners indicated that said property leased from the City is being used for a municipal purpose.
“11. Answering paragraph (11) of the second amended complaint, said defendants allege that the opinion of the Attorney General referred to clearly requires the District to reimburse the City of Daytona Beach and the County of Volusia for any expenditures made, unless they serve a municipal purpose or a county purpose. Neither a municipal purpose nor a county purpose was served by the expenditure of county funds as alleged.
“12. Answering paragraph (12) of the second amended complaint, said defendants allege:
“a. That the aforesaid real estate leased from the City by the District is not exempt from taxation by Volusia County under Section 13, Chapter 31343, Laws of Florida 1955, both for the reason that said exemption is unconstitutional as hereinbefore alleged and because said property of the City is not being utilized for a municipal purpose.
“b. Said property of the City is not exempt from tax under Section 192.06(2), Florida Statutes 1959, because said property is not being used for a municipal purpose as required by said section as applied and interpreted by the Supreme Court of Florida. The words ‘public purpose’ in said section are interpreted to mean ‘municipal purpose’ consistent with the requirements of Article 9, Section 1, and Article 16, Section 16 of the Florida Constitution, the latter of which provides:
‘The property of all corporations * * * shall be subject to taxation unless such property be held and used exclusively for religious, scientific, municipal, educational, literary, or charitable purposes.’
“c. The taxability of said City property by the county is recognized by the defendant District in that certain lease between it and the Daytona International Speedway *658 Corporation, dated November 8, 1957, which provides as follows:
‘The District is responsible for rental payments required to be paid the City of Daytona Beach, a municipal corporation of the State of Florida, in accordance with the lease it holds covering a part of the demised property and any real property taxes assessed against the demised premises and if the District shall fail or refuse to pay any such rental or taxes before the same shall become delinquent, then the Corporation shall have the right and option to pay same and to deduct any sums so expended from any rent thereafter to become due the District, pursuant to the terms hereof.’
“13. Answering paragraph (13) of the second amended complaint, said defendants say that the statute quoted is immaterial in that it was not adopted until 1961 and its purpose is to limit rather than extend tax exempt privileges. In no event can the Legislature extend the privileges of tax exemption beyond the mandate of the Constitution.
“14. The allegations in paragraph (14) of the second amended complaint are denied and the said defendants allege that the tax assessments made on property owned by the City are as required by the laws of the State of Florida.”
Our initial reaction was that the Circuit Judge erred by denying Defendants the right to file their Amended Answer. However, in analyzing the contents of the proffered Answer alongside Defendants’ initial Answer we find no allegations of such materiality as would challenge the contents of the Supreme Court’s opinion filed in this cause and, therefore, reluctantly hold that permitting the subject Answer to be filed would have been to no avail. Although at the time the cause was before the Supreme Court, it had before it only a Complaint, a Motion to Dismiss and the trial court’s Order of Dismissal, it proceeded to reach and dispose of the merits of the appeal. In so doing it raced over the Motion to Dismiss, reached Defendants’ Answer wherein Defendants admitted the allegations concerning the subject lease, and then found, “This [Supreme] Court’s decision in the bond validation case is also decisive of all relevant issues involving the merits in the present case.” [3]
It is obvious that the Supreme Court considered the merits of the issues contained in Defendants’ Answer in its opinion in this cause for it apparently answered each of the allegations. A perusal of the subject Answer and the opinion confirms the above observation. Part I of the Answer admits that the initial lease was entered into between the City and the District on December 29, 1955, between the District and Speedway on November 8, 1957, and that the latter lease was subsequently revised. As to these leases, the Supreme Court stated:[4]
“The new and existing lease reduced the District’s rights to the facility to a three-month period each year, with further provision the Speedway Corporation, could, if it desired, pre-empt the three months for speedway racing purposes. But as we have seen, the revising of the lease did not detract from the predominantly public purpose of the facility, * *
Part III of the Answer alleged the unconstitutionality of parts of Chapter 31342 (Special Acts of 1955). The Supreme Court stated:[5] “This Court affirmed the validation of the proposed bonds of the District as a public issue, tax exempt. In reaching its decision in the validation case, it necessarily upheld the constitutionality of Chapter 31343 * * *.”
Part IV of Defendants’ Answer primarily alleges that the project considered by the Supreme Court in its bond validation opinion is not the same as the present operation. *659 Above-quoted portions of the Supreme Court’s opinion reflects that it thoroughly recognized the variances from the proposal considered by it in the bond validation opinion and swept them aside. The remaining allegations in Defendants’ Answer go primarily to question the public purpose of the Speedway operation and the Recreational District. We cite only one of many statements in the Supreme Court’s opinion which decided this question, viz:[6] "With remarkable anticipatory foresight he foreclosed in that opinion [Justice O’Connell’s opinion in the bond validation case] contrary contention of Respondents in this case by holding that even though the private corporation operates the Speedway facility most, if not all of the time each yearly lease period for Speedway racing purposes to the exclusion of other uses by the District or the public, this would not defeat the overall public purpose of the project or change it into a private venture. * * * The sweeping but realistic language of this Court in the bond validation case leaves no doubt of the public purpose of the Speedway facility and its municipally oriented aspects which implicitly included the constituent tax exemption privilege enjoyed by public agencies.”
A thorough reading of the much-quoted Supreme Court’s opinion in this cause leaves the reader without any particle of doubt that even if Defendants Tax Assessor and Tax Collector were given the opportunity and did prove each allegation in their Answer or proffered Amended Answer without contradiction, they nevertheless could not prevail because our highest court has already decided that the Speedway will continue its tax exempt status.
Finally, as to the second point, Appellants in their excellent brief, after reviewing the status of the pleadings, state: “In reality, however, the Supreme Court was only reviewing an order of dismissal. Defendants’ pleadings (i. e. Motion to Strike and Answer) were not properly before the Court. Nor was there any evidence in the record. Only the allegations set forth in Plaintiffs’ second amended complaint were considered. The Court did no more, nor could it have done more.” We pause to .note that it might well be argued that the Supreme Court could not do more but, just as certain as the sun will rise, it did do more.
Appellants go on to say, “It cannot be suggested seriously that when the Florida Supreme Court determined that the plaintiffs’ second amended complaint was legally sufficient, the Court went on to decide the entire case on its merits by an ad hoc procedural shortcut.” The Supreme Court not only devoted the major part of its opinion in deciding the merits of the case, but it also found that,[7] “This Court’s decision in the bond validation case is also decisive of all relevant issues involving the merits of the present case.” Although we do have misgivings as to the procedural matters raised by Appellants, we shall not attempt to substitute our judgment for that clearly expressed by the highest appellate court of this state. If that court violated elemental rules of procedure and established principles of due process of law, then it is their prerogative to mend their errors — not ours.
In view of the all-encompassing language of the Supreme Court in its consideration of this cause, we find all of Appellants’ points to be of no avail because we have no alternative but to affirm the decree of the trial court.
Affirmed.
WIGGINTON, C. J., and CARROLL, DONALD K., concur.

. Daytona Beach Racing & Recreational Facilities District v. Paul, 157 So.2d 156 (Fla.App.1st, 1963); certiorari granted 179 So.2d 349 (Fla., 1965); bond valida-turn proceedings, State v. Daytona Beach Racing and Recreational Facilities District, 89 So.2d 34 (Fla., 1956).

. Daytona Beach Racing & Recreational Facilities District v. Paul, 170 So.2d 349 (Fla., 1965).

. Ibid at page 354.

. Ibid at page 355.

.Ibid at page 354.

. Id.

. Id.