293 So.2d 689 (1974)
J. Ed STRAUGHN, As Director of the Department of Revenue, and School Board of Escambia County, Florida, Appellants,
v.
Lindley M. CAMP et al., Appellees.
No. 42437.
Supreme Court of Florida.
March 7, 1974.
Rehearing Denied May 23, 1974.
*690 Robert L. Shevin, Atty. Gen., Baya Harrison, III, Asst. Atty. Gen., and Edward T. Barfield, Pensacola, for appellants.
Patrick G. Emmanuel of Holsberry, Emmanuel, Sheppard, Mitchell & Condon, Pensacola, for appellees.
ERVIN, Acting Chief Justice.
This cause is before us on direct appeal from the Circuit Court of the First Judicial Circuit in and for Escambia County. We have jurisdiction of the appeal pursuant to Article V, § 3(b)(1), Constitution of Florida, F.S.A. and Rule 2.1, subd. a(5)(a), F.A.R., 32 F.S.A., because the Circuit Court held Section 14 of Chapter 71-133, Laws of Florida 1971, and provisions of said Chapter brought forward as Sections 196.199(2)(a) and 196.012(5), Florida Statutes 1971, F.S.A. did not operate to repeal the part of Chapter 25,810, Laws of Florida, Special Acts of 1949, granting tax exemption of lands of the Santa Rosa Island Authority that had been leased to private persons. The decision held these repealer provisions of Chapter 71-133 were unconstitutional because they violated Article I, § 10, United States Constitution, forbidding impairment of contracts.
The facts establish that by deed of conveyance from the United States, dated January 15, 1947, Escambia County secured title to a portion of Santa Rosa Island, Escambia County, Florida. The deed of conveyance provided in pertinent part that the land conveyed was to:
"[B]e used by it for such purpose as it shall deem to be in the public interest or be leased by it from time to time in *691 whole or in part or parts to such persons and for such purposes as it shall deem to be in the public interest... ."
Subsequently, the Florida Legislature authorized the use of the property by the Board of County Commissioners of Escambia County by enacting Chapter 24,500, Laws of Florida, Special Acts 1947. In pertinent part, Chapter 24,500 provided:
"Section 2. The County Commissioners shall have the power:
"(1) For and on behalf of the County, to use the Island for such purposes as it shall deem to be in the public interests, or from time to time to lease the Island in whole or in part or parts to such person or persons and for such purposes as it shall deem to be in the public interest... ."
In order to accomplish its goal of developing Santa Rosa Island, the Legislature gave to the Commissioners the power to:
"... purchase, construct, extend, improve, own, maintain, insure and operate, either itself or by contract or lease with individuals, firms or corporations, all or any of the following: Toll or free bridge or bridges across Santa Rosa Sound and any other waters or swamps and lowlands adjacent to or a part of the Island; boats and car ferries to and from the Island; ports, harbors, airports for land or seaplanes, and shipping and airport facilities on the Island or elsewhere in connection with service to and from the Island; board walks, sea walls, breakwaters, bulkheads, causeways, wharves, docks, piers, yacht basins and jetties; sewerage systems, water systems, fire fighting systems and equipment, power lines and cables, gas systems and any other utilities desirable or convenient for the development and service of the Island and persons, businesses and improvements thereon; streets, roads, alleyways, sidewalks and other public ways; parks, playgrounds, recreation and amusement buildings and centers, bathing beaches, bath houses, swimming pools, auditoriums, theaters, churches, houses of worship, pavilions, athletic fields, golf courses, and other buildings and places of all kinds for the assembly, entertainment, health, welfare and recreation of the public; hotels, restaurants, eating places, cottages, homes, dwellings, tourist camps and other places of lodging and eating places of all kinds, taxi cabs, busses and transportation systems; office and store buildings, warehouses, depots, stations, and all other kinds of business or commercial properties; administration buildings and offices for use of the County Commissioners or the Authority." (Emphasis added.)
In addition, Chapter 24,500 authorized the following: (1) the acquisition and sale or lease of all property necessary to accomplish the purpose of the Act; (2) the borrowing of money and issuing of negotiable revenue bonds not to exceed $5,000,000.00 for the purpose of defraying the cost of improvements; (3) advertising of the Island; (4) the enactment and enforcement of building codes and rules and regulations for the health and safety of the Island's inhabitants; and, (5) the use of improvements.
Chapter 24,500 further established and required the delegation of the Commissioners' power to a board to be known as the Santa Rosa Island Authority.
The next act relating to the Island was enacted in 1949. Chapter 25,810, Laws of Florida, Special Acts 1949, provided:
"Section 1. It is hereby determined and declared by the Legislature of the State of Florida that all of the powers conferred upon the Board of County Commissioners of Escambia County, Florida, and Santa Rosa Island Authority, or either of them, by said Chapter 24,500, Laws of Florida, Special Acts of 1947, and the exercise of such powers or any of them constitute and are county purposes.

*692 "Section 2. All of the real and personal property owned, controlled or used by Escambia County, Florida, or Santa Rosa Island Authority under or by virtue of said Chapter 24,500, Laws of Florida, Acts of 1947, or for any of the purposes thereof, including real and personal property rented or leased to others by said county or said Santa Rosa Island Authority, shall be exempt from state, county, municipal and all other ad valorem taxes of every kind."
Finally, by Chapter 26,422, Laws of Florida, Extraordinary Session 1949, the Legislature in effect re-enacted Chapter 24,500 and increased the amount of money which the Authority could borrow.
The exemption which was established in Chapter 25,810, Section 2, was preserved by Chapter 61-266, Laws of Florida, General Laws 1961, and was carried as Fla. Stat. § 192.62 (1961-1967), F.S.A., and finally carried as Fla. Stat. § 196.25 (1969), F.S.A.
In 1971, the Legislature enacted Chapter 71-133, Laws of Florida, General Acts 1971, which amended Chapters 192 and 196, Florida Statutes, F.S.A.
Pursuant to Chapter 71-133, Section 14, the exemption afforded to the appellees under Chapter 25,810 was repealed as follows:
"All special and local acts or general acts of local application granting specific exemption from property taxation are hereby repealed to the extent that such exemption is granted. ..." (Emphasis added.)
Under Chapter 71-133, Section 15, the tax exemption which the appellees had enjoyed under Fla. Stat. § 196.25 (1969), F.S.A., was expressly repealed.
Additionally, Chapter 71-133 amended Chapter 192, Florida Statutes, F.S.A., by adding a new section, which provides in pertinent part:
"192.010 Property subject to taxation.  Unless expressly exempted from taxation, the following property shall be subject to taxation in the manner provided by law:
"...
"(2) All leasehold interests in property of the United States, of the State of Florida, or any political subdivision, municipality, agency, authority or other public body corporate of the State."
With the passage of these provisions, the appellant taxing authorities made known their intention to assess and tax the leasehold interest of the appellees.
With this brief legislative history in mind, we now turn to the salient facts which led up to the present cause. It appears from the record that prior to the passage of Chapter 71-133, and under the authority of the earlier acts, the Authority and most of the appellees entered into long term lease agreements  most of the leases to run for 99 years. At the time of trial, there were approximately 750 of these leases in existence, all of which were entered into prior to the effective date of Chapter 71-133.
Approximately 700 of the leased sites have had single family residences constructed on them; about 15 to 16 have had motels constructed on them; and about 20 to 25 have had businesses constructed on them  including gift shops, clothing stores, restaurants and service stations.
Under the terms of the leases, the title to all fixtures and improvements is vested in the County but the lessees have the right to mortgage or sell their leases, including the improvements. The lessees also have the right to renew their leases.
In return for the use of the property, the lessees pay a fixed rental rate to the Authority. Those lessees who operate businesses also provide approximately 5% of their annual gross income from their businesses to the Authority. These funds are *693 used by the Authority for improving the facilities on the Island.
During the period when the Authority was advertising the availability of the leases, the property in question was promoted as being tax exempt. Some of the actual lease agreements, however, expressly contemplated the likelihood of taxes being imposed. Those agreements provided, in part, as follows:
"While it is believed that the leased property and improvements are exempt from all ad valorem taxes, lessee shall pay any such taxes that may be lawfully assessed against the said property or improvements."
Other than this statement, which the later leases did not include, there is no statement contained in any of the leases pertaining to ad valorem taxes on the leased property.
Upon passage of Chapter 71-133, and receipt of notice of the taxing authorities' intention to impose ad valorem taxes upon the lessees' interest, the appellees instituted suit against the Tax Assessor, the Tax Collector, the School Board, the Board of County Commissioners of Escambia County and the Director of the Florida Department of Revenue. The appellees sought relief in the form of a declaratory judgment and an injunction. The trial court held in favor of the appellees.
The trial court's holding appears to be grounded upon three separate grounds. First, the trial court found that, based upon the advertisement of the leases as being tax free, the Authority impliedly covenanted on behalf of the County that the County would refrain from imposing taxes on these leasehold estates.
Secondly, the trial court found that the primary purpose of the leases was that they provide income which supports the programs of the Authority. The trial court therefore concluded that the appellees were performing a proper public purpose within the meaning of the provisions of Chapter 24,500, Chapter 25,810 and Chapter 71-133.
Finally, based upon its finding that the representations made by the Authority to the effect that the leaseholds were tax free and therefore constituted a part of the leases, the trial court concluded that to allow the imposition of ad valorem taxes now would impair the obligation of contracts in violation of Art. I, § 10, Constitution of the United States.
Based upon these findings, the trial court, in an attempt to construe Chapter 71-133, as being constitutional, construed it to have a prospective application only and so as not to repeal the tax exemptions which had been granted under Fla. Stat. § 196.25 (1969), F.S.A., and Chapter 25,810. From this decision, the Director of the Department of Revenue and the School Board of Escambia County have appealed.
In reaching our decision, we feel compelled to discuss only one of the grounds upon which the trial court based its decision, to-wit:
"That the plaintiff lessees in the exercise of their leases serve and perform a proper public purpose and function within the meaning of that term as incorporated within the provisions of the Special Acts of 1947 and 1949, and of Chapter 71-133, Laws of Florida, Acts of 1971."
The trial court, in its statement above, was referring to that portion of Chapter 71-133 which amended Chapter 196, Florida Statutes, F.S.A., by adding a new section  Section 196.199. Under Fla. Stat. § 196.199(2)(a) (1971), F.S.A., it is provided in pertinent part:
"(a) Leasehold interests in property of the United States, of the state or any of its several political subdivisions, or of municipalities, agencies, authorities and other public bodies corporate of the state shall be exempt from ad valorem taxation only when the lessee serves or performs a governmental, municipal or public *694 purpose or function, as defined in § 196.012(5)...."
Fla. Stat. § 196.012(5) (1971), F.S.A., which is also a new section, defines public purpose as follows:
"Governmental, municipal or public purpose or function shall be deemed to be served or performed when the lessee under any leasehold interest created in property of the United States, the State of Florida or any of its political subdivisions, or any municipality, agency, authority or other public body corporate of the state is demonstrated to perform a function or serve a governmental purpose which could properly be performed or served by an appropriate governmental unit, or which is demonstrated to perform a function or serve a purpose which would otherwise be a valid subject for the allocation of public funds... ."
It is true that the Legislature in Chapter 25,810 exempted from state, county and municipal (and other) ad valorem taxes all real and personal property owned, controlled, used or leased by the County of Escambia or the Santa Rosa Island Authority. See State v. Escambia County, (Fla. 1951) 52 So.2d 125. However, this exemption by Chapter 25,810 did not preclude a subsequent legislature from providing for the taxation of these leaseholds of the County and the Authority to private persons for predominantly private purposes.
The Legislature in enacting what is now Section 196.199 has expressly provided for such leasehold taxation. For the reasons and authorities hereinafter set forth we must conclude that the leaseholds in question are taxable as a matter of law.
That a subsequent legislature has the unquestioned authority to repeal prior tax exemption statutes as was done by Section 14 of Chapter 71-133, see Daytona Beach Racing and Recreational Facilities, Inc. v. Paul, (Fla. 1965) 179 So.2d 349, text 355. The Legislature also has the power to provide for the taxing of private leaseholds previously exempt as it has done in Chapter 71-133. The pertinent provisions of Chapter 71-133 so providing now appear as Sections 196.199(2)(a) and 196.012(5), F.S. 1971, F.S.A. See application of the holding of Hillsborough County Aviation Authority v. Walden (Fla. 1968) 210 So.2d 193, to Section 192.62, F.S., F.S.A., a predecessor statute to Sections 196.199(2) (a) and 196.012(5).
Merely because plaintiffs' (appellees') leaseholds were originally granted tax exemption and they enjoyed exempt status for a number of years, affords no basis for forever removing and completely immunizing them from taxation. See, e.g., Sovereign Camp, W.O.W. v. Lake Worth Inlet District of Palm Beach County, 119 Fla. 782, 161 So. 717, and Curators of Central College v. Rose, 182 S.W.2d 145, appeal dismissed 65 S.Ct. 269, 323 U.S. 678, 89 L.Ed. 650. Such exempt status may be changed by a subsequent legislature. Daytona Beach Racing and Recreational Facilities, Inc. v. Paul, supra, text 355.
In recent years several changes of legislative policy relative to tax exemptions have been made, e.g., those involving leased properties of church and fraternal societies and leased properties of education and charitable associations and foundations. Moreover, the predominate use or status of a property may change from public to private rendering it taxable under the Constitution. See Hillsborough County Aviation Authority v. Walden, supra.
It is well established that one legislature cannot bind its successors with respect to the exercise of the taxing power, and that contract rights are ordinarily not beyond the taxing power but are generally subject thereto. Vol. 16 C.J.S. Constitutional Law § 284, p. 1294. Wisconsin and Michigan Railway Co. v. Powers, 191 U.S. 379, 48 L.Ed. 229; Pennsylvania Railroad Company, et al. v. State of New York, 230 N.Y.S.2d 1004 (C.A. 1962).
*695 The finding by the trial court that the plaintiffs' (appellees') leaseholds (i.e., mostly leases for dwellings used as private homes) serve a public purpose and are therefore entitled to exemption under taxing statutes is a finding of law contrary to controlling case law. See City of Daytona Beach v. King (1938) 132 Fla. 273, 181 So. 1. Also see Section 10, Article VII, 1968 Florida Constitution, which requires taxation of leaseholds of similar nature to those here involved and is diametrically contra to the trial court's findings. Chapter 71-133 and its immediate predecessor, Chapter 69-55, were enacted in compliance with § 10 of Article VII.
The plaintiffs (appellees) admit that the great majority of their leases are those wherein an individual lessee is occupying and enjoying a private home for the use and benefit of the lessee and his or her family. Hillsborough County Aviation Authority v. Walden, supra, construed the predecessor law (F.S. Section 192.62, F.S.A.) to Chapter 71-133 and held that despite exemption of prior leases, an airport authority lease for a motel at an airport is taxable. It is obvious that holding is applicable here.
It is the utilization of leased property from a governmental source that determines whether it is taxable under the Constitution. Furthermore, tax exemptions should be strictly construed against the claimant. State v. Inter-American Center Authority (Fla. 1955) 84 So.2d 9. Reference is made particularly to Rast v. Hulvey, 77 Fla. 74, 80 So. 750, holding that where property was not being used solely for educational purposes, but was used also as a home by an individual and his family, it was not exempt from taxation. To the same effect see Amos v. Jacksonville Realty and Mortgage Co., 77 Fla. 403, 81 So. 524; Orlando Utilities Commission v. Millican (DCA 4 1969), 229 So.2d 262; State ex rel. Miller v. Doss, 146 Fla. 752, 2 So.2d 303; State v. Town of North Miami (Fla. 1952) 59 So.2d 779, text 784; Adams v. Housing Authority of City of Daytona Beach (Fla. 1952) 60 So.2d 663 and Hillsborough County Aviation Authority v. Walden, supra.
It is our view that Chapter 71-133, Laws of Florida 1971 which became effective December 31, 1971, should be applied to all of the plaintiffs' leases executed prior to December 31, 1971, and that these leaseholds were taxable for the year 1972 and thereafter. To hold otherwise is contrary to existing legislative intent and obviously would give the statute a discriminatory and unconstitutional interpretation.
We find no basis whatever for holding that the imposition of ad valorem taxation on plaintiffs' leaseholds would impair the obligation of contract. As before stated, there was no binding obligation on the part of the County or the Authority or the State, nor could there have been one constitutionally entered into by any of them, that never in the future could the legislature impose an ad valorem tax on plaintiffs' leasehold interests. See Vol. 16, C.J.S. Constitutional Law, § 284, page 1294, and Wisconsin and Michigan Railway Co. v. Powers, supra.
From their very use and nature plaintiffs' leaseholds neither serve nor are used to perform a public service in the constitutional or statutory sense. Hillsborough County Aviation Authority v. Walden; City of Daytona Beach v. King; State v. Town of North Miami and Adams v. Housing Authority of City of Daytona Beach, supra.
We find no basis whatever for an equitable estoppel of the taxing authorities from assessing taxes from 1972 forward upon the leasehold interests of plaintiffs. For as we have seen, it lies within the legislature's prerogative to repeal tax exemptions and impose taxes on lands previously exempt. Compare Gies v. Fischer (Fla. 1962) 146 So.2d 361; Kirklands v. Bradley (1932) 104 Fla. 390, 139 So. 144; and Tamiami Trial Tours, Inc. v. Lee *696 (1940) 142 Fla. 68, 194 So. 305. And in instances where the predominant use of governmentally leased land is for private purposes the Constitution requires that the leasehold be taxed. Hillsborough Aviation Authority v. Walden, supra. There can be no estoppel in such circumstances.
We find as a matter of law that taxes should be imposed upon plaintiffs' leaseholds from 1972 forward for the reasons explained.
Reversed.
BOYD and CARLTON (Retired), JJ., and WILLIAMS, Circuit Judge, concur.
McCAIN, J., dissents with opinion in which DEKLE, J., concurs.
McCAIN, Justice (dissenting):
The Legislature has heretofore declared that the development of Santa Rosa Island constituted a public purpose. In so declaring its intent, the Legislature specifically enumerated those uses for the Island, including the uses to which the appellees have put their leased property. These were specifically considered necessary to accomplish this development, and included a tax exemption which the majority now takes away in face of different findings by an able trial court. In the beginning, this Island perhaps may not have been worthy of great comment but apparently now it is.
Years ago even Tennyson wrote of many wonderful things that could be developed, when he said:
"There grew great tracts of wilderness, Wherein the beast was ever more and
more,
But man was less and less, till Arthur
came,
... . Then he drove
The heathen: after, slew the beast, and felled
The forest, letting in the sun, and made ... Broad pathways for the hunter and knight
And so returned."
Now that the forests have fallen and the sun shines on Santa Rosa Island, their Arthurs must pay for that which was originally exempt.
Now, turning to the specific legal principle involved, while the Legislature has eliminated the tax exemptions which were expressly provided to these appellees, it did not repeal Chapter 24,500, or that portion of 25,810, in which it was declared that the development of the Island was a public purpose.
Of additional significance is the fact that this Court has ruled upon the validity of this legislative declaration of public purpose and expressly upheld it. In State v. Escambia County, 52 So.2d 125 (Fla. 1951), we stated the following:
"Is the provision of Chapter 25810, Special Laws 1949, exempting from state, county, municipal, and all other ad valorem taxes on real and personal property owned, controlled or used by the County of Escambia or the Santa Rosa Island Authority as authorized by Chapter 24500, Special Laws 1947, violative of Section 1 of Article 9 of the Florida Constitution? The Legislature decreed that the Santa Rosa Island Authority project was a county purpose. The Legislature has the power to make such findings, subject to judicial review."
As to the effect of such a declaration by this Court, we stated in Daytona Beach Racing and Recreational Facilities Dist. v. Paul, 179 So.2d 349, 353 (Fla. 1965), as follows:
"It would be a matter of great inconsistency, if not bad faith, after declaring the Speedway facility a public or municipal purpose in the bond validation case in the broadest and most sweeping terms, to hold the decision below in the instant case does not conflict with the bond validation *697 decision and that the tax exemption granted by the Legislature in favor of the lands and facilities utilized in the operation of the Speedway is no longer applicable because they have somehow lost their recognized attributes as public or municipal purpose lands or facilities. It is axiomatic that a public facility or project declared such by the Legislature and so recognized by the State's highest Court does not lose its' tax exempt status where there has been no legislative repeal of its exemption privilege." (Emphasis supplied.)
I would therefore hold that, based upon the declaration of the Legislature and our holding in State v. Escambia County, supra, the development of Santa Rosa Island constitutes a public purpose as defined by Fla. Stat. § 196.012(5) (1971), F.S.A., and is therefore exempt under Fla. Stat. § 196.199(2)(a) (1971), F.S.A.
Accordingly, the decision of the court below, which is consistent with my view herein, should be affirmed.
DEKLE, J., concurs.