341 So.2d 498 (1976)
VOLUSIA COUNTY, a Political Subdivision of the State of Florida, et al., Appellants,
v.
DAYTONA BEACH RACING AND RECREATIONAL FACILITIES DISTRICT, a Body Politic and Corporate under the Laws of the State of Florida, and International Speedway Corporation, a Florida Corporation, Appellees.
No. 49115.
Supreme Court of Florida.
November 4, 1976.
Rehearing Denied February 9, 1977.
*499 William M. Barr of Raymond, Wilson, Conway, Barr & Burrows, Daytona Beach, for Volusia County; Robert L. Shevin, Atty. Gen., and David M. Hudson, Asst. Atty. Gen., for J. Edward Straughn, appellants.
Thomas T. Cobb of Cobb, Cole, Sigerson, McCoy, Bell & Bond, Daytona Beach, for Daytona Beach Racing and Recreational Facilities Dist.; S. LaRue Williams of Kinsey, Vincent, Pyle & Williams, Daytona *500 Beach, for International Speedway Corp., appellees.
HATCHETT, Justice.
This is the latest in a long series of lawsuits marking the history of the Daytona International Speedway, and beginning even before the racetrack was built. In 1955, by special act,[1] the legislature created appellee Daytona Beach Racing and Recreational Facilities District (the District). The District leased 374 acres of land from the City of Daytona Beach and subsequently acquired an additional 74 acres in fee simple. The original plan was to finance construction of a racetrack on this land by means of revenue bonds. The circuit court entered a decree validating the proposed bonds and this Court affirmed the decree on appeal, 89 So.2d 34 (Fla. 1956), but the bonds were never issued. Instead the District leased all 448 acres to appellee International Speedway Corporation (the Corporation), which undertook to construct a racetrack facility at its own expense, as the principal consideration for the leasehold.
In 1960 and 1961, the Volusia County Tax Assessor assessed the city-owned portion of the land, which was leased by the Corporation from the District, as nonexempt realty. The Corporation, the District, and the City of Daytona Beach sued to enjoin collection of this tax. The trial court's dismissal of their complaint was affirmed by the District Court of Appeal, First District, Daytona Beach Racing & Rec. Fac. Dist. v. Paul, 157 So.2d 156 (Fla. 1st D.C.A. 1963), but this Court quashed that decision in an opinion reported at 179 So.2d 349 (1965). On remand, the plaintiffs prevailed and the judgment of the trial court was affirmed. Paul v. Daytona Beach Racing & Rec. Fac. Dist., 208 So.2d 653 (Fla. 1st D.C.A. 1968) cert. den. 224 So.2d 299 (Fla. 1969).
Before the present litigation began, the City of Daytona Beach conveyed to Volusia County its interest in the land leased to the District. The people of Florida adopted a new Constitution effective January 1, 1969. The legislature enacted the Tax Reform Act,[2] now codified for the most part in Chapter 196, Florida Statutes; and thereafter enacted Chapter 73-647, Laws of Florida.[3] In light of these developments, appellant Tax Assessor of Volusia County assessed the Corporation's leasehold *501 as nonexempt property, whereupon the District and the Corporation filed suit against Volusia County, the tax assessor, the tax collector and the executive director of the department of revenue. The trial court entered judgment for the plaintiffs, enjoining the "assessing, levying or attempting to collect ad valorem taxes on the leasehold." Appeal was taken to the District Court of Appeal, First District, and transferred here. Because the trial court "initially and directly pass[ed] on the validity of a state statute [Chapter 73-647, Laws of Florida]," Article V, Section 3(b)(1), we have jurisdiction.
The trial court ruled that Chapter 31343, Laws of Florida 1955, operates to exempt the District's leasehold from ad valorem taxation, notwithstanding the legislature's subsequently expressed intention "that any facilities of said district be taxed in the same manner as any other property in Volusia County." Chapter 73-647, Laws of Florida. Even if this grudging interpretation[4] of the specific repealer could be sustained, the trial court's judgment is incompatible with the general repealer embodied in Chapter 71-133, § 14, Laws of Florida. Straughn v. Camp, 293 So.2d 689 (Fla. 1974). In light of the repealer statutes and other substantial changes in Florida law since the District's tax exempt status was first litigated, the earlier decisions are not determinative of the present controversy. Straughn v. Camp, supra; Wagner v. Baron, 64 So.2d 267 (Fla. 1953). We are concerned here, moreover, with a leasehold and not with a fee simple interest in real estate.
The Constitution of 1885 provided that property owned by corporations "shall be subject to taxation unless ... used exclusively for religious, scientific, municipal, educational, literary or charitable purposes." Article 16, Section 16, Florida Constitution 1885. The phrase "municipal ... purposes" was broadly interpreted to include any "public" purpose; under the Constitution of 1885, this Court decided that simply holding a proprietary interest in "a community recreational asset and business stimulant," Daytona Beach Racing & Rec. Fac. Dist. v. Paul, 179 So.2d 349, 353 (Fla. 1965), like the speedway served a "municipal purpose." Id. Perceiving decisions of this kind as creating inequities in the tax structure, the draftsmen of the Constitution of 1968 limited the municipal purpose exemption to "property owned by a municipality and used exclusively by it for municipal or public purposes." Article VII, Section 3(a), Florida Constitution 1968. The present Constitution further provides that where any project financed by revenue bonds "is occupied or operated by any private corporation ... pursuant to ... lease... the property interest created by such ... lease shall be subject to taxation to the same extent as other privately owned property." Article VII, Section 10(c), Florida Constitution 1968. Paralleling this constitutional provision, Section 196.001, Florida Statutes (1975) makes "[a]ll leasehold interests in property ... of the state, or any political subdivision, municipality, agency, *502 authority, or other public body corporate of the state" subject to taxation unless otherwise exempted.[5]
Other statutory provisions exempt privately held leaseholds of governmental property from taxation "only when the lessee," Section 196.199(2)(a), Florida Statutes (1975), "is demonstrated to perform a function or serve a governmental purpose which could properly be performed or served by an appropriate governmental unit, or . . which would otherwise be a valid subject for the allocation of public funds." Section 196.012(5), Florida Statutes (1975). The lessee in the present case does not serve a governmental purpose. The Corporation's operation of the speedway "is purely proprietary and for profit." Williams v. Jones, 326 So.2d 425, 433 (Fla. 1975) (reh. den. 1976). The Corporation exists in order to make profits for its stockholders and uses the leasehold to further that purpose. This use is determinative: "It is the utilization of leased property from a governmental source that determines whether it is taxable under the Constitution." Straughn v. Camp, supra, at 695.
The burden is on the claimant to show clearly any entitlement to tax exemption. "The rule is that all property is subject to taxation unless expressly exempt and such exemptions are strictly construed against the party claiming them. State ex rel. Wedgworth Farms, Inc. v. Thompson, 101 So.2d 381 (Fla. 1958)." Williams v. Jones, supra, at 435. Mr. Justice Sundberg, writing for the Court in Williams v. Jones, supra, delineated the scope of the exemption at issue here in the following words:
The exemptions contemplated under Sections 196.012(5) and 196.199(2)(a), Florida Statutes, relate to "governmental-governmental" functions as opposed to "governmental-proprietary" functions. With the exemption being so interpreted all property used by private persons and commercial enterprises is subjected to taxation either directly or indirectly through taxation on the leasehold. Thus all privately used property bears a tax burden in some manner and this is what the Constitution mandates. At 433.
Operating an automobile racetrack for profit is not even arguably the performance of a "governmental-governmental" function.
In the trial court, appellees also maintained that their leasehold enjoyed tax exempt status as a matter of contractual right. This position does not square with the rule that "a subsequent legislature has the unquestioned authority to repeal prior tax exemption statutes." Straughn v. Camp, supra, at 694. But appellees do not even claim that the legislature entered into a contract, only that the City of Daytona Beach agreed to
levy no tax upon the improvements constructed by the [District] or upon the leasehold estate ... created [by the lease between the City and the District], so long as the same is held by ... [a] public body.
The City of Daytona Beach is without authority to bind the legislature, and the lease between the City and the District evinces no attempt to exercise such authority ultra vires. The leasehold adverted to in appellees' complaint, moreover, was created by the lease between the City of Daytona Beach as lessor and the District as lessee. On the other hand, the leasehold which has been assessed as nonexempt was created by the lease between the District as lessor and the Corporation as lessee. Finally, a privately held corporation organized and operated for its stockholders' profits is not a "public body" within the meaning of the agreement between the City and the District.
The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
OVERTON, C.J., and BOYD and ENGLAND, JJ., concur.
ROBERTS and ADKINS, JJ., dissent.
NOTES
[1] Chapter 31343, Laws of Florida 1955 (repealing Chapter 29590, Laws of Florida 1953). Section 13 of this special act provides:

Exemption from Taxation.  As the economic welfare of the inhabitants of the District is dependent to a substantial degree on tourist business brought to the District because of the recreational facilities and opportunities afforded therein, and as the acquisition or construction of racing and recreational facilities hereunder will promote the economic, commercial and residential development of the District, and as the exercise of the powers conferred by this Act to effect such purposes constitutes the performance of essential public functions, and as the racing and recreational facilities will constitute public property used for public purposes, no taxes or assessments shall be levied upon any such racing and recreational facilities or upon the income therefrom and any bonds issued under the provisions of this Act, their transfer and the income therefrom (including any profit made on the sale thereof), shall at all times be free from taxation within the state.
[2] Chapter 71-133, Laws of Florida. Section 14 of the Tax Reform Act has not been codified in Florida Statutes. In pertinent part, Chapter 71-133, § 14, Laws of Florida, provides:

All special and local acts or general acts of local application granting specific exemption from property taxation are hereby repealed to the extent that such exemption is granted... .
[3] Chapter 73-647 provides, as follows:

WHEREAS, facilities of the Daytona Beach racing and recreational facilities district have been exempt from taxation and assessment, and
WHEREAS, the ever-increasing cost of government in Volusia County requires that additional funds be derived from taxation of property in the county, and
WHEREAS, the removal of such exemption will result in certain facilities in Volusia County providing their pro rata share of the cost of government, and
WHEREAS, the legislation intends that any facilities of said district be taxed in the same manner as any other property in Volusia County, NOW THEREFORE
Be It Enacted by the Legislature of the State of Florida:
Section 1. Section 13 of chapter 31343, Laws of Florida, 1955, is hereby repealed.
Section 2. This act shall take effect January 1, 1974.
[4] The trial court summed up its reasoning in these words:

In this case the Legislature saw fit to repeal the specific grant of a tax exemption, but did not repeal the declaration of public purpose. If the Legislature does not repeal the public purpose declaration as set forth in Chapter 31343 and which has been upheld as a valid declaration by the Supreme Court of Florida, there can then be no ad valorem taxation of the leasehold interest of the Plaintiffs' property. Chapter 73-647, Laws of Florida is therefore void insofar as it is used to provide the basis for the assessment and levy of ad valorem taxation of the property owned by Plaintiff, Daytona Beach Racing and Recreational Facilities District, or leased by it to Plaintiff, International Speedway Corporation.
The Court rejected precisely these arguments in Straughn v. Camp, 293 So.2d 689 (Fla. 1974), in holding that the leaseholds involved there were not exempt from ad valorem taxation. The dissent protested in vain that "while the Legislature has eliminated the tax exemptions ... it did not repeal ... [the] declar[ation] that the development ... was a public purpose" and that this Court had previously considered "the validity of this legislative declaration of public purpose and expressly upheld it." At 696 (McCain, J., dissenting).
[5] Section 196.001, Florida Statutes (1975) supersedes the statutory provisions considered in Dade County v. Pan American World Airways, Inc., 275 So.2d 505 (Fla. 1973).