669 So.2d 1105 (1996)
LEON COUNTY EDUCATIONAL FACILITIES AUTHORITY and SRH, Inc., Appellants,
v.
Bert HARTSFIELD, Leon County Property Appraiser, Appellee.
No. 95-1399.
District Court of Appeal of Florida, First District.
March 19, 1996.
Kenza van Assenderp of Young, van Assenderp & Varnadoe, Tallahassee; Richard E. Benton, Tallahassee, for Appellants.
Robert L. Hinkle and Leslei G. Street of Radey, Hinkle, Thomas & McArthur, Tallahassee, for Appellee.
*1106 ERVIN, Judge.
Appellants, Leon County Educational Facilities Authority (LCEFA or Authority) and SRH, Inc., seek review of a summary final judgment denying their claim of entitlement to an exemption from ad valorem taxation. Although we affirm, we deem it helpful to discuss appellants' second issue, asserting that the lower court erred in declining to find that the property LCEFA leases is exempt, pursuant to section 196.199(1)(c), Florida Statutes (1993),[1] for the reason that the property is both owned and used by a governmental entity created by general law.
The LCEFA is a public corporate body established by the Leon County Board of County Commissioners by resolution and created pursuant to chapter 243, Part II, Florida Statutes. Part II thereof empowers the Authority to own, lease and finance educational facilities. SRH is a nonprofit Florida corporation created and established solely for the purpose of facilitating the financing, acquisition, construction and equipping of improvements to a dormitory and food service project. In order to finance the project, investors purchased a participating interest in the net revenues via certificates of participation (COPs), which are a variety of municipal bonds that receive tax-free treatment under the provisions of the Internal Revenue Code.
The property that is the subject of the tax assessment is operated and maintained by LCEFA as a college dormitory and dining hall and related student facilities. SRH, a nonexempt entity, holds title to the property and leases the facilities, improvements and equipment to LCEFA.
The lease requires the Authority to pay for the project's maintenance and insurance and to pay any taxes assessed on the property. The Authority employs and supervises a manager to oversee the property and to collect rent and other revenues from the occupants. It delivers these revenues to a trustee for the holders of the COPs, and the trustee provides the manager with necessary funds to operate and maintain the facility. Net revenues, after payment of operating and maintenance expenses, are used to repay the investors. If the Authority defaults on paying the rent, the trustee is empowered to sell or relet the project, and any net proceeds in excess of the amounts owed the investors must be paid to LCEFA. The Authority holds an option to acquire the property for a nominal consideration once the COPs are paid in full; however, under the terms of the lease, it is not compelled to exercise the option.
After appellee, the Leon County Property Appraiser, denied SRH's application for a tax exemption for the year 1993, LCEFA and SRH sued the property appraiser for declaratory relief, and the lower court, as stated, entered summary final judgment in favor of the property appraiser and dismissed appellants' complaint with prejudice.
LCEFA contends on appeal that because SRH, as lessor, was created solely to finance the acquisition of the project property and retains only passive, legal title to the property, and the Authority, as lessee, has active, equitable and beneficial ownership of same, and the leased property is being used for a governmental, public purpose, it was exempt from ad valorem property taxation pursuant to section 196.199(1)(c).
LCEFA relies primarily upon a recent decision of the Fifth District, First Union National Bank of Florida v. Ford, 636 So.2d 523 (Fla. 5th DCA 1993), involving a lease very similar in its terms to that in the case at bar. The Fifth District reversed the trial court's judgment denying an ad valorem tax exemption to the lessor-owner of certain realty and improvements used for a governmental purpose, concluding that the lessee's *1107 equitable ownership of the property was sufficient indicia of ownership for acquisition of an exemption. The facts recited in the opinion reflect that First Union National Bank of Florida held legal title to real property that it had leased to Brevard County, which used the realty for its primary governmental and administrative offices. Individual investors had purchased COPs to finance the construction of the offices. During the life of the lease, which ran from year to year, any sums the Bank received in excess of funds owed to the certificate holders would be returned to the county. If the county defaulted on the rent, the Bank was required to sell the property or relet it and use the proceeds to pay the certificate holders, with any excess to be paid to the county. The lease would automatically expire in the year 2014, when the certificate holders were to be paid in full. At that time, the Bank was required to convey legal title in the property to the county. The county was also given the option to prepay the sums owed, whereupon the Bank would be required to transfer title.
Recognizing the case to be one of first impression in Florida, the Fifth District concluded that the county had retained sufficient rights and duties to make it the equitable owner for tax-exemption purposes. The court distinguished this court's opinions in Ocean Highway & Port Authority v. Page, 609 So.2d 84 (Fla. 1st DCA 1992), and Mastroianni v. Memorial Medical Center of Jacksonville, Inc., 606 So.2d 759 (Fla. 1st DCA 1992), which had disapproved exemptions from ad valorem taxation, because the owners of the leased properties failed to comply with the provisions of section 196.192(1), Florida Statutes, requiring that property be owned by an exempt entity and used for an exempt purpose in order to qualify for the exemption. In reaching its decision, the Fifth District distinguished the facts in its case, commenting that Mastroianni and Ocean Highway involved the application of section 196.192 to leased property operated respectively by a nonprofit hospital corporation and a port authority, whereas the pertinent statute essential for resolving the issue before it was section 196.199(1)(b), allowing an exemption for property of the state and its subdivisions used for governmental purposes. Moreover, the court noted that counties are immune from state taxation, thus no additional statutory exemption was required. Id. at 526. Finally, the Fifth District observed that the issue of equitable title did not appear to be before the court in either Mastroianni or Ocean Highway.
We cannot agree with the Fifth District's decision that the facts in First Union militate in favor of a different result from that reached in Mastroianni and Ocean Highway. Nor do we agree, as was implied in First Union, that the provisions of sections 196.192 and 196.199 may be read in isolation from each other. Although it is correct that this court emphasized the provisions of section 196.192 in Mastroianni and Ocean Highway, and not those of section 196.199, as in First Union, we regard this to be an immaterial distinction. As more fully discussed infra, the two statutes must be read in pari materia, and a proper construction of both leads to the inevitable conclusion that all property must be owned and used for a public purpose by an exempt entity in order for it to acquire an exempt status. In our judgment, if the Fifth District had taken into proper account the legislative history of the 1988 amendment to section 196.192, a reasonable construction would have required a decision that legal title to the property in dispute be in the entity seeking the exemption. Before the 1988 amendment to section 196.192, subsection (1) thereof had provided: "All property used exclusively for exempt purposes shall be totally exempt from ad valorem taxation." After its amendment, subsection (1) provided: "All property owned by an exempt entity and used exclusively for exempt purposes shall be totally exempt from ad valorem taxation." (Emphasis added.)
In its construction of the unamended statute, the Second District in Daniel v. T.M. Murrell Co., 445 So.2d 587 (Fla. 2d DCA), review denied, 453 So.2d 43 (Fla.1984), held that the exemption from ad valorem taxes provided therein applied to property that was used for exempt purposes, without regard to its ownership. Consequently, it rejected the property appraiser's argument that the exemption should be denied because there was *1108 no concurrence of both educational use and ownership of the property by the educational institution, the lessee, which operated a private school. In so deciding, the court based its holding both on the language of the statute and prior cases construing it which had emphasized the character of the use of the property, rather than the nature of its ownership.
In Mastroianni, this court traced the legislative history leading up to the 1988 amendment, concluding its examination with the following pertinent comments:
While our construction of the 1988 amendment to section 196.192 is derived from the plain language of the statute itself, we note that this construction of the statutory language is consistent with its legislative history. The bill eventually enacted as Chapter 88-102, Laws of Florida, was entitled "Committee Substitute for Senate Bill 375" (CS/SB 372). The April 1988 Senate Staff Analysis and Economic Impact Statement relating to CS/SB 375 indicates that the Senate Committee on Finance, Taxation and Claims was aware of the holdings in Daniel v. Murrell and Schultz v. Trustees Skycrest Baptist Church, Inc., 508 So.2d 1314 (Fla. 2d DCA), rev. denied, 518 So.2d 1278 (Fla. 1987), which followed Daniel. The staff report states that one of the specific purposes of the bill was to make clear that "only property owned by an exempt entity and used for exempt purposes may be exempt from [ad valorem] taxation." (Emphasis added.) In explanation, the report states: "Recent court decisions have allowed an exempt entities' [sic] exempt status to pass through to those they rent or lease property from. This bill would prevent this." (Emphasis added.) The report further states that, "Local governments will benefit from the standpoint that current property tax bases will be protected from being reduced by reliance on Murrell and Skycrest." Thus, the staff report confirms that a specific purpose for enacting chapter 88-102 was to statutorily overrule the effect of the decisions in Daniel and Skycrest by expressly providing that only property owned by an exempt entity and used for an exempt purpose is authorized to be exempt from ad valorem taxation.
Mastroianni, 606 So.2d at 763-64.
These statements, which we reiterated in Ocean Highway, make clear that the 1988 amendment was designed to implement the legislative intention to tax all property, notwithstanding its use for a public purpose, if its legal ownership remains in a nonexempt entity. In so doing, the legislature clarified its purpose by pronouncing that section 196.199(1), which provided both before and after the 1988 amendment that "[p]roperty owned and used by [certain specified] governmental units shall be exempt from taxation," meant precisely thatproperty may not be owned solely by an exempt entity or used only for an exempt purposebut must be both owned by the exempt person and used for an exempt purpose before it is entitled to the exemption provided by law.
Although the amendment to section 196.192 did not expressly state that the owner must have legal title to the property sought to be exempted, we think it clear from a review of the legislative history and an examination of current Florida statutes on the same subject which predate the amendment that the legislature could not have reasonably contemplated any type of ownership other than legal ownership. For example, section 196.011(1), Florida Statutes, provides:
Every person or organization who, on January 1, has the legal title to real or personal property ... which is entitled by law to exemption from taxation as a result of its ownership and use shall, on or before March 1 of each year, file an application for exemption with the county property appraiser.
(Emphasis added.) Thus, reading the term "owned" in section 196.192(1) in pari materia with that of "legal title" in section 196.011(1), leads to the conclusion that the legislature, in enacting the 1988 amendment, had no purpose other than to require legal title to the property by the entity which uses it for an exempt purpose. It is a long-recognized maxim of statutory construction that laws should be construed with reference to the purpose designed to be accomplished, and in connection with other laws in pari *1109 materia. Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla.1981). In fact, this court in Mastroianni specifically concluded that the lessee, a nonprofit hospital corporation, "was not a proper applicant for the exemption because it did not have legal title to the subject property as provided by section 196.011." Mastroianni, 606 So.2d at 765.
Our decision in this regard is altogether consistent with another rule of statutory interpretation, construing exemptions from taxation strictly against the taxpayer. See, e.g., Dade County Taxing Auths. v. Cedars of Lebanon Hosp. Corp., 355 So.2d 1202 (Fla.1978); Volusia County v. Daytona Beach Racing & Recreational Facilities Dist., 341 So.2d 498 (Fla.1976), appeal dismissed, 434 U.S. 804, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977); State ex rel. Green v. City of Pensacola, 126 So.2d 566 (Fla.1961). The application of this rule, moreover, conforms with other provisions of chapter 196. For example, section 196.001, Florida Statutes, requires all real property to be taxed unless there is an express exemption from same. Nowhere in any statute placed under this chapter is any express reference made to equitable ownership. In fact, section 196.199(7) enumerates only two exceptions to the definition of the term "owned" for purposes of the tax exemption, neither of which applies to the case at bar: property leased for 100 years or more, or that which is financed, acquired or maintained through the issuance of bonds pursuant to various parts of chapter 159. Obviously, if the legislature had intended to exempt equitable ownership of property, it could have easily so provided in subsection (7) of this statute.
We therefore decline to follow the Fifth District's decision in First Union National Bank of Florida, and we expressly certify our conflict with it.
AFFIRMED.
WEBSTER and MICKLE, JJ., concur.
NOTES
[1] Section 196.199(1)(c) provides:

(1) Property owned and used by the following governmental units shall be exempt from taxation under the following conditions:
* * * * * *
(c) All property of the several political subdivisions and municipalities of this state or of entities created by general or special law and composed entirely of governmental agencies, or property conveyed to a nonprofit corporation which would revert to the governmental agency, which is used for governmental, municipal, or public purposes shall be exempt from ad valorem taxation, except as otherwise provided by law.