355 So.2d 1202 (1978)
DADE COUNTY TAXING AUTHORITIES, APPELLANT,
v.
Cedars of Lebanon Hospital Corp., Inc., et al., Appellees.
No. 51123.
Supreme Court of Florida.
February 16, 1978.
Rehearing Denied April 5, 1978.
Stuart Simon, County Atty. and R.A. Cuevas, Jr., Asst. County Atty., Miami, for appellant.
Robert E. Venney of Gunn, Venney & Buhler, Miami, and Andrew J. Mirabito of Frates, Floyd, Pearson, Stewart, Richman & Greer, Miami, for appellees.
SUNDBERG, Justice.
This case is before us on certified question from the United States Court of Appeals for the Fifth Circuit, pursuant to Section 25.031, Florida Statutes (1975), and Florida Appellate Rule 4.61.
As appears from the opinion of the United States Court of Appeals (Dade County Taxing Authorities v. Cedars of Lebanon Hospital Corp., Inc., 546 F.2d 63 [5th Cir.1977]), the statement of the facts and the question certified are as follows:

*1203 Statement of Facts

In December, 1973, Cedars of Lebanon Hospital Corp., Inc. and its related corporate entities filed suit in Dade County Circuit Court seeking exemption from ad valorem taxes on properties adjacent to its existing hospital.
Five months later (in April, 1974) Cedars filed for Chapter XI rearrangement in federal bankruptcy court. The bankruptcy court thereupon enjoined further prosecution of all pending litigation, foreclosures, executions, etc. against Cedars. The local taxing authorities filed with the bankruptcy court proofs of claim totalling approximately $500,000 for 1973 and 1974 ad valorem taxes against Cedars and its related entities. They also moved the bankruptcy court for:
1. Leave to proceed with the pending state court tax cases; and
2. For a determination that the bankruptcy proceedings would not impair or diminish Cedars' liability for 1973 and 1974 ad valorem taxes or any liens therefor.
The bankruptcy court authorized the filing of an adversary proceeding before it to resolve the question of tax exemption on Cedars' property. An adversary proceeding was filed. After trial, the bankruptcy court entered a final judgment which exempted some of Cedars' property and upheld ad valorem taxes levied on the remainder thereof.
The federal district court affirmed the bankruptcy court's final judgment. This appeal ensued.
This appeal is directed to the court's granting of tax exempt status to one particular parcel of Cedars' real property (the Care Center) for the 1974 tax year.
The Care Center was designed to be used as a minimum ... care [patient] facility adjacent to the acute care hospital. The purpose of the facility is to provide a limited care option for Cedars' patients who do not require the extensive services and greater cost of a regular acute-care hospital provided in the main hospital. Structurally it is a motel-type facility with wider than normal corridors. It includes 112 rooms with a nursing station on the ground floor. The rooms resemble a typical motel room in layout and amenities, except that the bathroom contains a locking medicine cabinet, an emergency call system connected to the nursing station and grab bars.
Construction of the Care Center was completed in mid-1973. The building was issued a certificate of occupancy in August, 1973. It was issued a hospital license by the State of Florida one month before the tax date.
The Care Center was not utilized as a minimum ... care [patient] facility on January 1, 1974. No patients were admitted to the Care Center during the calendar year 1974.
During 1974, the rooms in the Care Center were used on a number of occasions for nonpatient occupancy. Some rooms were rented to businessmen and salesmen during the period January through April, 1974. In addition, some rooms were used to house Secret Service personnel during a visit of former President Nixon to the hospital complex in March 1974.
The local taxing authorities contended that the Care Center was not entitled to exemption for the 1974 tax year under Florida law as it was not actually used on the taxing date (or at any time during the tax year) for an exempt purpose.
Cedars contended that the intended future use to which the property will be put, in light of the fact that the property is designed for health care activity and that the terms of its FHA financing arrangement restrict it to such usage, is sufficient to qualify for an exemption.
The trial court accepted Cedars' position and exempted the Care Center. This Order was affirmed by the District Court and this appeal ensued.
Question to be Certified
Where the Care Center is designed and restricted to hospital usage is it entitled to exemption from ad valorem taxation prior to actual use as such? (Footnote omitted)
*1204 For the reasons hereinafter expressed, we answer the question certified to us by the United States Court of Appeals for the Fifth Circuit as follows: The Care Center which, as of January 1, 1974, was designed for and restricted to hospital usage, but was not in actual use for hospital purposes, was not entitled to exemption from ad valorem taxation for the year 1974.
The taxable status of property is determined on January 1 of each year. See Section 192.042, Florida Statutes (1973). This is the date on which the tax assessor determines whether a particular parcel of property is entitled to exemption from taxation for the tax year. See Overstreet v. Ty-Tan, Inc., 48 So.2d 158 (Fla. 1950). Exemption from ad valorem taxes is granted to nonprofit hospitals, among other facilities. See Sections 196.012, 196.192, 196.195, 196.196, and 196.197, Florida Statutes (1973). Appellant argues that the actual use of the Care Center as of the assessment date, rather than the use which appellees intended to make of the property at some future time, is determinative of whether an exemption should have been granted. Because the Care Center was not utilized as a hospital or other exempt facility as of January 1, 1974, maintains appellant, the property should have been assessed for taxation for the 1974 tax year.
We agree that the actual use of the Care Center as of the assessment date, rather than its intended future use, controls the determination of whether the property qualifies for exemption from ad valorem taxes as a nonprofit hospital.
The "actual use" doctrine was enunciated in Lake Worth Towers, Inc. v. Gerstung, 262 So.2d 1 (Fla. 1972), wherein this Court found that exemption was not warranted under circumstances similar to those present in the instant case. There, construction on a nonprofit home for the aged commenced prior to January 1 of the 1968 tax year. However, the building was not substantially completed until March, 1968. In June of 1968, the State Board of Health issued a license to petitioner, Lake Worth Towers, Inc., made retroactive to January 1 of that year, to operate a home for the aged. In April and again in August of 1968, petitioner requested from respondents, City Commissioners and taxing authorities of the City of Lake Worth, exemption from city taxes on the home. The requests were denied and the property was assessed for taxation for 1968. Petitioner then filed suit in circuit court seeking an order enjoining respondents from collecting municipal taxes on the property for 1968 or, alternatively, forcing them to reassess the property as unimproved for that year. In approving the circuit court's denial of relief to petitioner, we stated:
[S]ection 192.04, F.S. 1967 provided that "All real and personal property shall be subject to taxation on the first day of January of each year... ." Taxable status for the year also is determined as of that date. Overstreet v. Ty-Tan, Inc., Fla. 1950, 48 So.2d 158. To obtain total exemption, the property must be held and used [emphasis original] in a manner authorized by Section 192.06, F.S. Dr. William Howard Hay Foundation v. Wilcox, 1945, 156 Fla. 704, 24 So.2d 237. On January 1, 1968 Petitioner did not qualify under Section 192.06(14)(a) as a tax exempt home for the aged since the building was not in use as a nonprofit home for the aged. (Emphasis supplied) (Footnote omitted) 262 So.2d at 3.
In the case sub judice, as in Lake Worth Towers, Inc., supra, it is immaterial that the corporation intended to use the property for an exempt purpose subsequent to January 1; the controlling factor was that, as of the assessment date, it was not actually in use for such purpose. The fundamental principles of our democratic system mandate that every taxpayer contribute his fair share to the tax revenues. As this Court stated in Bancroft Inv. Corporation v. City of Jacksonville, et al., 157 Fla. 546, 27 So.2d 162, 170 (1946):
[T]his is a democracy in which every parcel of property is expected to bear its due portion of the burden of government, unless exempted by the legislature in the manner provided by Section 1, Article IX *1205 of the Constitution. Courts have no more important function than to direct the current of the law in harmony with sound democratic theory.
Accord, ITT Development Corporation v. Seay, 347 So.2d 1024 (Fla. 1977); Williams v. Jones, 326 So.2d 425 (Fla. 1975). Consistent with this democratic ideal is the maxim of statutory construction that the exemption laws are to be strictly construed. Straughn v. Camp, 293 So.2d 689 (Fla. 1974); Haines v. St. Petersburg Methodist Home, Inc., 173 So.2d 176 (Fla.2d DCA 1965). Florida's statutory law provides exemption for property "used" in an exempt manner. See Sections 196.012, 196.192, 196.195, 196.196, and 196.197, Florida Statutes (1973). Because the legislature has failed to expressly define the term "use," however, it has been this Court's responsibility to determine the meaning which the legislature intended to accord the term. We honored this responsibility when, in Lake Worth Towers, Inc., supra, we determined that actual use (rather than intended use) was required by the exemption laws. We reaffirm this conclusion today. The principles requiring taxpayers' contribution of their fair share and strict construction of exemption laws, which were applied in both Lake Worth Towers, Inc. and the case sub judice, are not novel. These principles have also been adhered to by application of the "actual use" doctrine to homestead exemptions. Actual physical occupancy of a home as of the statutorily specified date has long been an essential ingredient of the homestead exemption right. See Croker v. Croker, 51 F.2d 11 (5th Cir.1931); Solary v. Hewlett, 18 Fla. 756 (Fla. 1882). Cf. Anderson Mill & Lumber Company v. Clements, 101 Fla. 523, 134 So. 588 (1931). In view of these precedents the nonexempt use to which the property was put subsequent to January 1, 1974, is immaterial and does not constitute a consideration for our opinion today.
This Court recognizes the potential hardship inherent in the "actual use" doctrine. Unforeseen construction delays and the like may postpone actual use of a structure until after January 1, the assessment date. Although a use ordinarily recognized as exempt might commence in February of the tax year, for example, no exemption would be granted for that year because, as of January 1, the required use was not being made. We are also aware, however, of the hardship to owners of nonexempt property which would obtain by adoption of the "intended use" doctrine proposed by appellee. This doctrine would produce an increase in exemptions, thereby placing a greater proportion of the tax burden upon other classes of property. Absent a clear expression of legislative intent that the tax exemption statutes yield such a result we cannot, consistent with the previously described controlling precedents of this State, accept appellees' position.
In view of our negative answer to the certified question, we conclude that the bankruptcy court improperly determined that the Care Center was exempt from ad valorem taxes for the 1974 tax year.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, ENGLAND, HATCHETT and KARL, JJ., concur.