509 So.2d 1316 (1987)
Thomas J. GRADY, Etc., Appellant,
v.
Ford HAUSMAN, Etc., Appellee.
No. 86-1271.
District Court of Appeal of Florida, Fifth District.
July 16, 1987.
Robert J. Pleus, Jr., of Smathers, Pleus, Adams, Fassett & Divine, P.A., Orlando, for appellant.
Steven R. Bechtel, Orlando, and Law Offices of Gaylord A. Wood, Jr., Ft. Lauderdale, for appellee.
ORFINGER, Judge.
Thomas J. Grady, as Bishop of the Diocese of Orlando (Diocese) appeals from a final judgment in which the trial court, sitting de novo, partially overturned the Property Appraiser of Orange County's denial of a tax exemption on portions of a seventeen-acre parcel of property owned by the Diocese. The Diocese contends that the entire parcel should have been granted *1317 an exemption. The Property Appraiser has not cross-appealed the trial court's grant of partial relief.
The Holy Family Parish consists of 4,000 parishioners and occupies a seventeen-acre tract of land in Orange County. The portion of property involved in this case was designated on the exemption application as "Holy Family Catholic Church Rectory and Parking Lot." For ease in identification at trial, those portions of property which were denied an exemption by the property appraiser were designated as parcels "A," "B," "C" and "D." These parcels, which adjoin the paved parking lot and the rectory have been partially maintained. The grassy areas can be and are sometimes used for recreational purposes and one of them is used for overflow parking when necessary. They were denied an exemption because they were physically unimproved. Both at trial and on appeal, the property appraiser agreed that these portions would have been granted an exemption had they contained physical improvements. When the property appraisal adjustment board upheld the denial, the Diocese filed an action in the circuit court pursuant to sections 194.036(2) and 194.171, Florida Statutes (1985). After hearing the evidence, the trial court granted a tax exemption to the parcels designated as C and D but denied the requested relief for parcels A and B.
The trial court found that parcels C and D were used predominantly for church purposes. The court found that these parcels acted as a buffer area to the rectory in providing a place for meditation. With regard to parcels A and B, however, the trial court was of the opinion that there was a lack of substantial competent evidence to show that these parcels were used predominantly for religious purposes. The court recognized that although children often played on these parcels and the rectory maintained and landscaped the parcels, the religious use of this land was incidental. We note, however, that there is virtually no difference in either the physical characteristics or usage between parcels A and B and parcels C and D.
The Diocese contends that the property appraiser's denial of a tax exemption, predicated solely upon the nonexistence of any physical improvements or regular activity on the property, was erroneous. According to the Diocese, this method of property appraisal presupposes that developed property on a church site is used exclusively for religious purposes while undeveloped property serves no useful purpose. The Diocese contends further that besides failing to use the applicable statutory criteria, the property appraiser's method of appraisal arbitrarily defies common sense by refusing to recognize that trees, grass, flowers and plants are aesthetic qualities which may enhance places of religious worship.
Article VII, Section 3(a) of the Florida Constitution specifically exempts from taxation by general law those portions of property "as are used predominantly for educational, literary, scientific, religious or charitable purposes. Pursuant to section 196.193(1)(b), Florida Statutes (1985), the property appraiser may deny a tax exemption of the property claimed by religious organizations if he determines any of the following: (1) use of the property is not clear; (2) the property is being held for speculative purposes; (3) the property is being rented or hired out for other than religious or educational purposes.
The criteria to be used by the property appraiser in determining whether property is entitled to exempt status are set forth in section 196.196(1)(a), Florida Statutes (1985). Pursuant to this section, the property appraiser must consider the following: (1) the nature and extent of the charitable, religious, scientific or literary activity of the applicant; (2) a comparison of such activities with all other activities of the organization; and (3) the utilization of the property for charitable, religious, scientific or literary activities as compared with other uses. Additionally, an incidental use of the property for educational, literary, scientific, religious or charitable purposes will *1318 not qualify the property for an exemption. § 196.196(2), Fla. Stat. (1985).
As evidenced by the statutes, eligibility for an exemption is predicated upon a predominant religious use of the property. The term predominant simply implies that the religious use must be the most significant activity on the land where the land may support multiple activities.[1]See Hausman v. Rudkin, 268 So.2d 407 (Fla. 4th DCA 1972).
The Diocese contends that the uncontroverted evidence at trial clearly indicated that parcels A and B were used exclusively for religious purposes. Parcel A, approximately 208' X 920' immediately adjoins the paved parking area and is landscaped and maintained for aesthetic reasons; it is also used for parking, picnics and other outdoor activities and for protection as a buffer area. Parcel B, a small piece, 105' X 290', adjoins the rectory. The parcel was left in its natural state in order to provide a tranquil setting for the parishioners and in order to provide a certain amount of privacy for the area surrounding the rectory. According to the Diocese, the parish's decision to maintain the land in its natural state as opposed to a concrete jungle was deliberate. Because public worship includes not only indoor worship but outdoor worship as well, the Diocese maintains that the trial court's erroneous application and interpretation of Florida law fails to recognize that portions of church sites left in their natural state often contribute to the spirituality of the parish.
The Diocese cites several cases in support of its position. Of those cases, Lummus v. Miami Beach Congregational Church, 142 Fla. 657, 195 So. 607 (1940) and Order Minor Conventuals v. Lee, 64 A.D.2d 227, 409 N.Y.S.2d 667 (N.Y. App. Div. 1978), merit discussion. Although both of these cases involved a determination of whether property held and used exclusively rather than predominantly for religious purposes was entitled to an exemption, the cases are quite apposite.
Lummus involved an action by the Miami Beach Congregational Church against the Tax Assessor, Lummus, and others to prevent the taxation of certain property owned by the religious corporation. The property had been conveyed to the church in 1926 by a warranty deed which restricted the use of the property to church purposes only. Although the land was initially purchased with the intention of creating a site for a house of worship, these plans failed to materialize for lack of financial support.
Assistant pastors living on the property free of rent contributed as caretakers of the property. Opportunities to rent the property were declined with the exception of one member of the church who, acting as caretaker for a period of several months, paid rent of his own volition. It *1319 was undisputed that the property was used only for club meetings, committee meetings and social gatherings of the church as well as a Boy Scout Troop sponsored by the church.
Under the constitution existing at the time, property held and used exclusively for religious purposes was exempt from taxation. The supreme court concluded that despite the fact that no church building had been constructed on the land, there was no evidence which suggested that the property was used for anything other than the appropriate activities of the incorporated church. The court recognized that although the use of this land for religious purposes was not continuous, it was deemed sufficient to grant the exemption. Sub judice, there is no evidence to suggest that the land in question is used for anything other than the appropriate activities of the church.
In Order Minor Conventuals, the plaintiff was a tax exempt, nonprofit corporation created by the Franciscan Fathers. Among its primary purposes was the acquisition of property and the construction, establishment and maintenance of churches, schools and missions. In 1973, the plaintiff acquired approximately sixty-six acres of wooded, hilly land for the sole purpose of establishing a hermitage and retreat center.
The property was unimproved at the time of acquisition with the exception of a onelane access road, later changed to two lanes. Later, the property was cleared, a pond was added and a chapel, hermitage, residence, workshop, garage and parking area were constructed on the property. A number of prayer stations were also added along the pathways in the wooded areas. Approximately 80% of the property was intended for retreat and prayer while 20% of the property was retained as a buffer zone.
The property tax law provided an exemption to corporations for real property owned and used exclusively for religious purposes. As in the instant case, a tax exemption was granted with regard to buildings located on the property but not with regard to the land itself. In holding that the entire property was being used primarily and thus exclusively as a spiritual retreat, the court stated:
Here, while the property can best be described as underdeveloped, the record plainly establishes that plaintiff has made or is making improvements ... to provide access to the property for the members of its faith and yet has preserved the natural state of the property in order to allow communication with God in solitude. As noted by the trial court, the fact that the majority of the property has not been cleared, fenced or otherwise improved does not exhibit an intent to abandon the property, but rather is further evidence of plaintiff's adherence to the belief that there is a need among the members of its faith for prayer and solitude free from the external pressure and duress of contemporary living. Accordingly, we conclude that plaintiff has sustained its burden of establishing that, despite the lack of development, the property is being primarily used as a spiritual retreat which is fairly incidental to the purposes for which plaintiff was organized and, thus, is entitled to the exemption.
Order Minor Conventuals, 409 N.Y.S.2d at 669. Although in both of the foregoing cases, an exemption was predicated upon the exclusive religious use of the property, the existence of physical improvements or a lack thereof was not deemed dispositive in determining a religious use of the land nor did the absence of such improvements preclude a finding that the land was used exclusively for religious purposes.
This court is mindful of the fact that applications for exemption are normally to be strictly construed against the applicant and in favor of taxability of the property. Volusia County v. Daytona Beach Racing and Rec. Fac's. Dist., 341 So.2d 498 (Fla. 1976), appeal dismissed, 434 U.S. 804, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977); *1320 Adams Const. Equip. Co. v. Hausman, 472 So.2d 467 (Fla. 5th DCA 1985). It is readily apparent in this case, however, that the property appraiser's method of appraising vacant property for purposes of determining whether the property is entitled to a tax exemption is arbitrarily based upon the existence or nonexistence of physical improvements and/or special activity on the land.[2] The relationship between physical improvement or specialized activity on land and tax exemption must necessarily vary from one exempt purpose to another.
A review of the record indicates that from a time prior to January 1, 1985, the disputed property has been continuously and exclusively used as a parish site for parish related activities. On weekends, the parish holds five masses and during the week there are daily activities. As previously indicated, the portions in question are sometimes used for recreational purposes, picnics and overflow parking. Additionally, the property has never been rented nor has it been held for speculation or resale. There are no plans to expand the facilities. Under these facts, as presented, the use of the property for religious purposes is clear. With the statutory criteria in mind, we find that the Diocese has met its burden of proving more than an incidental use of the entire parcel of property for religious purposes. Parcels A and B are no different in physical characteristics or usage than parcels C and D and should have been granted the same exemption.
Accordingly, the judgment is reversed insofar as it denies an exemption to parcels A and B.
REVERSED.
UPCHURCH, C.J., and COBB, J., concur.
NOTES
[1] The property appraiser contends that the Diocese has failed to demonstrate a predominant or even an occasional or incidental religious use of the property. He relies on Dade County Taxing Auth. v. Cedars of Lebanon Hosp. Corp., Inc., 355 So.2d 1202 (Fla. 1978) and Lake Worth Towers, Inc. v. Gerstung, 262 So.2d 1 (Fla. 1972), to support the proposition that the actual physical use of an establishment during the assessment year rather than its intended future use is the controlling determination. In Cedars of Lebanon, the hospital's care center, although designed for hospital purposes, was not being used at all for that purpose on January 1, 1974, the year for which the exemption was sought. In denying the exemption, the court held that "the actual use of the Care Center as of the assessment date [January 1] rather than its intended future use controls the determination of whether the property qualifies for exemption from ad valorem taxes as a non-profit hospital." 355 So.2d at 1204. This principle was applied in Lake Worth Towers, where the court upheld the denial of a tax exemption for 1968 on a non-profit home for the aged, because the home had not been completed and was thus not in actual use by January 1 of that year, the date on which the applicability of the exempt status is determined. That issue is not involved here. The uses to which the property was dedicated existed here on January 1, 1985, the year for which the exemption is in question. The Diocese does not rely on intended future use, but contends that the property is presently in actual use for church purposes. As will be seen, the only use of the property in question is for church related purposes.
[2] During oral argument, the property appraiser conceded that had Parcel A been paved and striped for parking, it would have been exempted, even if the actual use of that portion of the property did not differ from what it was now. We reject the contention that asphalt indicates a church purpose whereas grass does not.