545 So.2d 324 (1989)
METROPOLITAN DADE COUNTY, Appellant,
v.
MIAMI-DADE COUNTY COMMUNITY COLLEGE FOUNDATION, INC., Appellee.
No. 88-1300.
District Court of Appeal of Florida, Third District.
May 9, 1989.
Robert A. Butterworth, Atty. Gen., and Joseph C. Mellichamp, III, Asst. Atty. Gen.; Robert A. Ginsburg, Co. Atty., and Daniel A. Weiss, Asst. Co. Atty., for appellant.
Steel, Hector & Davis and Thomas R. Julin and Brenda G. Bryn, Miami, for appellee.
Before JORGENSON, COPE and LEVY, JJ.
*325 LEVY, Judge.
Metropolitan Dade County appeals an adverse summary judgment in which the trial court found that a taxpayer's property qualified for an ad valorem tax educational use exemption. We reverse.
Miami-Dade Community College Foundation, Inc. [hereafter "the Foundation"] is a direct support organization of Miami-Dade Community College [hereafter "the College"]. The Foundation was organized pursuant to Section 240.331, Florida Statutes (1985), to "receive, hold, invest, and administer property and to make expenditures to, or for the benefit of" the College. This case involves the Foundation's acquisition of a building on January 1, 1986 and its attempt to gain tax-exempt status for the building which was assessed on the same date.
In early 1985, the College determined that its existing leased bilingual educational facility was inadequate to meet the needs of the growing student body. When the Florida National Bank building (located directly across from the facility) was offered for sale, the College and the Foundation approved its acquisition. The plan was to remodel a portion of the building into a new educational facility and to lease the remaining portion of the building back to Florida National Bank.
At the close of the 1985 legislative session the College had not yet received the required legislative authorization or an appropriation for purchasing the building. To avoid the risk of losing the building to another purchaser, the College obtained approval from the Foundation to have the Foundation purchase that portion of the building to be used as an educational facility on behalf of the College.[1] (It was not necessary for the Foundation, as a direct-support organization, to obtain legislative authorization or an appropriation to purchase the property.) The Dade County Higher Educational Facilities Authority [the "Authority"], agreed to help the College by providing the Foundation with a tax-exempt revenue bond, and the Foundation agreed to remain liable for repayment.[2]
In May of 1985, confident that it would be able to obtain the necessary financing, the College began working on the plans for the remodeling.[3] In September of 1985, the Foundation began negotiating with contractors and was given permission from the Bank to begin demolition of its portion of the building prior to the closing. All these activities took place well before the actual date of the Foundation's purchase, or of the Property Appraiser's assessment, both of which occurred on January 1, 1986.
The remodeling of the building for use as an educational facility was completed on July 21, 1986. The Foundation's application for a tax exemption with respect to that portion of the building not leased to the bank was denied, and the Foundation filed a petition contesting that denial with the Property Appraisal Adjustment Board of Dade County. Subsequently, the Foundation paid the 1986 ad valorem taxes assessed against the property, withdrew its petition, and filed suit seeking exemption and a refund. Both parties filed motions for summary judgment and the trial court granted the Foundation's motion finding that the portion of the building not leased to the bank was exempt from ad valorem taxation based on its use for educational purposes. Our decision as to the issue of whether the trial court correctly found that the property qualified for an ad valorem tax educational use exemption under Sections *326 196.012(1) and 196.192(1), Florida Statutes (1985), depends upon an analysis of whether, under these particular facts, the property can be said to have been in "actual use" for educational purposes on the assessment date.[4]
There are conflicts in the decisions from other jurisdictions over the issue of whether buildings in the process of renovation qualify for a tax exemption as actually being "used" for the exempt purpose on the assessment date. See generally, Annot., Prospective Use for Tax-Exempt Purposes as Entitling Property to Tax Exemption, 54 A.L.R.3d 9, 72 (1973).
However, we are mindful of the language used by the Florida Supreme Court in the case of Dade County Taxing Authorities v. Cedars of Lebanon Hospital Corp., Inc., 355 So.2d 1202 (Fla. 1978), which appears to require actual physical use of property for an exempt purpose on the assessment date. In the Dade County Taxing Authorities case, a taxpayer claimed a charitable use exemption for 1974 as a nonprofit hospital under Sections 196.195, 196.196, and 196.197, Florida Statutes (1973), for a fully constructed "Care Center" building. The Care Center did not admit any patients during the calendar year of 1974, and, in fact, rented some of its rooms to businessmen and salesmen and, on one occasion, used the rooms to house Secret Service personnel during former President Nixon's visit to the hospital complex. The exemption was denied because, while the Care Center had been fully constructed and completed on the assessment date, it was not yet being used for hospital purposes. In holding that an intended future exempt use was an insufficient basis for nontaxable status, the court stated that it:
recognize[d] the potential hardship inherent in the "actual use" doctrine. Unforeseen construction delays and the like may postpone actual use of a structure until after January 1, the assessment date. Although a use ordinarily recognized as exempt might commence in February of the tax year, for example, no exemption would be granted for that year because, as of January 1, the required use was not being made.
Dade County Taxing Authorities, 355 So.2d at 1205. The court then went on to reaffirm the principle enunciated in Lake Worth Towers, Inc. v. Gerstung, 262 So.2d 1 (Fla. 1972), that in order to obtain an exemption, property must be actually in use for the exempt purpose on the day of the assessment.
In the Lake Worth Towers, Inc. case, the taxpayer was in the process of constructing a home for the aged on the assessment date, and claimed an exemption under former Section 192.06(14)(a), Florida Statutes (1967), for property "of a bona fide home for the aged." The former statute specifically provided, inter alia, that the exemption was available only to a particular type of qualifying institution, that was currently exempt from paying federal taxes. In denying the exemption, the court noted the petitioner's inability to file the financial *327 statements for the preceding fiscal year that were necessary to establish its status as a qualifying (exempt) institution. The petitioner was unable to file the necessary information because the building was not substantially completed until April of the year in which the exemption was requested. Thus, the court found the building "was not in use as a nonprofit home for the aged" on the assessment date. Lake Worth Towers, Inc., 262 So.2d at 3.
We recognize that an argument can be made that neither the Lake Worth Towers, Inc. case nor the Dade County Taxing Authorities case should control our decision. The Lake Worth Towers, Inc. case did not construe the educational use exemption derived from Sections 196.012(1) and 196.192(1), Florida Statutes (1985), and these sections, which apply to the present case, do not require that a particular qualifying type of institution be in existence or operating as of January 1 of the taxable year for the property to be exempt. The Dade County Taxing Authorities case involved a fully constructed building which was not being used for its exempt purpose even though it was capable of being fully utilized for hospital purposes because construction and remodeling had been completed prior to the assessment date. By contrast, the Foundation's building was not yet capable of physically being used to actually teach students on the assessment date. Yet, under the circumstances, it was being used for educational purposes to the fullest extent possible in that necessary renovations were being made to convert the building for classroom use. The Foundation did not merely hold the building for an anticipated future use and, furthermore, the property was not used for a nonexempt purpose.[5] While the property was not physically being used as a classroom on the assessment date,[6] it had been irrevocably committed to use as an educational facility and was actually in the process of remodeling toward that end. Thus, the policy concerns that the exempt purpose may be deferred for an excessive period of time, or that the exempt purpose may never be realized, do not appear to exist in a situation such as this where the preparations necessary to convert property into an exempt use are diligently being carried out.[7]
The underlying reality of this case is that one public entity  the County  is imposing ad valorem taxation on classroom property which is held exclusively for the use and benefit of another public entity  Miami-Dade *328 Community College. To assure that exempt property is actually employed for an exempt purpose, rather than being held in an exempt status without actually conferring a public benefit, is frequently proffered as a public policy justification for the "actual use" doctrine. In many contexts, this would appear to serve a beneficial purpose. However, there does not appear to be any policy justification for applying the "actual use" doctrine in cases like the present one which, in substance, involves ownership by public bodies. Since the Miami-Dade Community College Foundation is only authorized to hold property for the use and benefit for Miami-Dade Community College under Section 240.331, Florida Statutes (1985), the land in question is, for all practical purposes, held in public ownership.
The case of Montgomery County v. Meany, 34 Md. App. 647, 368 A.2d 1107, aff'd., 281 Md. 206, 377 A.2d 1184 (1977), is particularly instructive on this issue. In Montgomery, the taxpayer purchased a building for remodeling into an educational facility. On January 1 of the taxable year, the reconstruction had not yet been completed and classes had not begun. In holding that the "use" required to gain the educational tax exemption encompassed bona fide necessary preparations toward an educational purpose, the court stated:
"It is evident that the appellees were not required to be conducting classes on the determinative day of the taxable year. The test seems to be whether the institution is in the process of bona fide necessary preparation for its operations through the repair and improvement of the property. To put it another way, the test is whether the property is being used to its fullest extent for educational purposes under the circumstances of the given case."

Montgomery County v. Meany, 34 Md. App. 647, 368 A.2d 1107 at 1110. (citations omitted; emphasis added). See also Application of Magnetic Springs Foundation v. White, 165 Ohio St. 180, 134 N.E.2d 152 (1956) (property granted charitable use exemption even though it had not yet been used for treatment and rehabilitation because undergoing remodeling and repairs); Hedgecroft v. City of Houston, 150 Tex. 654, 244 S.W.2d 632 (1951) (remodeling into a clinic constitutes a use of the clinic and exempts the property); Application of Thomas S. Clarkson Memorial College of Technology, 274 A.D. 732, 87 N.Y.S.2d 491, aff'd., People v. Haggett, 300 N.Y. 595, 89 N.E.2d 882 (1949) (repairing and remodeling property for subsequent use as living quarters for college faculty, staff, and students considered an exempt use). This line of reasoning would seem to support and give life to the very purpose for creating the Foundation in the first place. It would also lead to a result that both makes sense and, at the same time, appropriately serves to benefit the people of Dade County.
Here, the argument can certainly be made that the Foundation was using the property to the fullest extent possible for educational purposes on January 1, when it was remodeling the building for use as a classroom facility. However, it appears that the Florida Supreme Court's language in Lake Worth Towers, Inc. and Dade County Taxing Authorities compels us to reverse. Nevertheless, because we believe this to be a question of great public importance, we certify the following question to the Florida Supreme Court:
WHERE PROPERTY IS PURCHASED BY A COMMUNITY COLLEGE DIRECT SUPPORT ORGANIZATION AND, ON THE ASSESSMENT DATE, IS IN THE PROCESS OF BEING REMODELED FOR EDUCATIONAL USE BY THE COMMUNITY COLLEGE, DOES THE PROPERTY QUALIFY AS BEING IN "ACTUAL USE" FOR PURPOSES OF ACQUIRING THE EDUCATIONAL TAX EXEMPTION UNDER SECTIONS 196.012(1) AND 196.192(1), FLORIDA STATUTES (1985)?
Reversed. Question Certified.
NOTES
[1] On January 1, 1986, the Foundation also entered into a 25 year lease-purchase agreement with the College providing the College with an option to purchase the premises at any time. After acquiring legislative authorization, and sometime prior to December 31, 1987, the College exercised its option and acquired legal title to the building.
[2] The Authority had rejected the College's initial request for the Authority to finance the purchase and to take title to the facility, apparently because it did not wish to assume the liability associated with owning the facility.
[3] The college contacted an architectural firm and requested that it develop site plans for the redesign of its portion of the building into fifteen classrooms, three computer labs, and three language labs. The architectural firm completed those site plans on November 18, 1985.
[4] The County contends that the Foundation is ineligible for the exemption regardless of whether the property is found to have been in actual use for educational purposes on the assessment date, because the Foundation is not an educational institution. It argues that under the Florida Constitution and statutes, educational property tax exemptions under Chapter 196 are restricted to property owners who qualify as an "educational institution." This argument lacks merit because the language of Section 196.192(1), Florida Statutes (1985), provides that property only has to be "used" for an exempt purpose in order to qualify for an exemption. See Daniel v. T.M. Murrell Co., Inc., 445 So.2d 587 (2d DCA) (property qualifies for educational exemption under Section 196.192(1) where lessee uses property exclusively for educational purposes without regard to status of legal owner), rev. denied, 453 So.2d 43 (Fla. 1984). We note that under the language of the revised Section 196.192(1), Florida Statutes (Supp. 1988), our conclusion would be different.

Furthermore, we agree with the County's contention that the property does not qualify for an exemption under Sections 243.33 or 196.198, Florida Statutes (1985), because the Foundation does not fall within the definition of an educational institution. We note that our conclusion here would also be different under the revised Section 196.012(5), Florida Statutes (Supp. 1988), which specifically lists educational direct-support organizations organized pursuant to Section 240.331 as within the definition of an educational institution.
[5] Whether property is being used for a nonexempt purpose is an important factor in making the decision as to whether the property qualifies for a tax exemption. In the case of Hausman v. First Baptist Church of Pine Hills, Inc., 513 So.2d 767 (Fla. 5th DCA 1987) the court granted a religious tax exemption to vacant land sporadically used by a church. The court stated that: "The church's present religious use of the property, while not evidenced by improvements and not continuous, was exclusive of any other use and not incidental to any nonexempt use." Hausman v. First Baptist Church of Pine Hills, Inc., 513 So.2d at 768. See also City of Sarasota v. Mikos, 374 So.2d 458, 460 (Fla. 1979) (court granted municipal property exemption finding that "vacant land held by a municipality is presumed to be in use for a public purpose if it is not actually in use for a [nonexempt] private purpose on tax assessment day"); Lummus v. Miami Beach Congregational Church, 142 Fla. 657, 195 So. 607, 609 (1940) (court stated in granting land a religious exemption that "[t]here is naught to show that it is used for any other than the appropriate activities of the incorporated church").
[6] Ironically, there never could be a "physical" educational use of the building on January 1, in the sense that teachers would be teaching and students would be learning, because this is the time of year that classes are traditionally closed for "winter vacation."
[7] We note also that the uniqueness of this factual situation, in that the property was being remodeled into classrooms, lessens the danger that it would actually eventually be used for a nonexempt purpose. A facility with 15 classrooms and three computer and language labs is obviously well-suited for educational purposes and not easily convertible into a commercial use. By contrast, in the case of Dade County Taxing Authorities v. Cedars of Lebanon Hospital Corp., Inc., 355 So.2d 1202 (Fla. 1978), where a charitable use exemption was denied, the "hospital Care Center" building structurally resembled a motel-type facility. There were restroom facilities in many of the rooms and the building was constructed with wider-than-normal corridors. This made it readily amenable, and arguably more susceptible, to the nonexempt commercial purpose of being used as a motel, which is the use the building was actually put to on the assessment date and thereafter.