843 So.2d 922 (2003)
William MARKHAM, as Broward County Property Appraiser, Appellant,
v.
PPI, INC., d/b/a Pompano Park Racing, Appellee.
No. 4D01-4722.
District Court of Appeal of Florida, Fourth District.
March 19, 2003.
Rehearing Denied May 19, 2003.
*923 J. Christopher Woolsey, Gaylord A. Wood, Jr., and B. Jordan Stuart of Law Offices of Wood & Stuart, P.A., Fort Lauderdale, for appellant.
Daniel S. Rosenbaum, Marvin P. Pastel, II, Joan Nesta Burnett, and Alan B. Koslow of Becker & Poliakoff, P.A., Fort Lauderdale, for appellee.
GROSS, J.
The narrow issue in this appeal is whether land used for the boarding and training of horses constitutes a "bona fide agricultural purpose" within the meaning of section 193.461, Florida Statutes (2001). We hold that it does and affirm.
PPI owns 180 acres of property in Pompano Beach, Florida. Seventy-five acres are devoted to the boarding and training of horses; forty acres contain a main racing track, 90% used for training and 10% for live racing; and the remaining sixty-five acres comprise the grandstand area and parking lot.
In addition to boarding and training on the property, another use of the property was to develop and mature some of the horses. PPI offered an affidavit from its general manager stating that an average two or three-year-old horse boarded on the property can gain over 300 pounds in the course of one season. Also, over 35% of the boarded horses were one to two years old when they arrived on the property, which is the most dramatic growth period and stage for horses. The average stay *924 for a horse on the property was from eight to ten months.
In 2000, PPI applied for an agricultural classification for the year 2000, for approximately 115 acres representing the boarding/training area and the racing track. Markham denied the request, concluding that the boarding and training of horses was not an agricultural use since it did not lead to the production of an agricultural product.
PPI appealed the decision to the Broward County Special Master, who recommended that PPI be granted the agricultural classification. The Broward County Value Adjustment Board denied the agricultural classification, and PPI then filed suit in the circuit court.[1] Both parties moved for summary judgment, and the trial court ruled in favor of PPI. The trial court concluded that the boarding and training of horses is a bona fide commercial agricultural use of the land. Markham timely appealed.
To successfully move for summary judgment, the moving party must conclusively demonstrate to the trial court that no genuine issue of material fact exists between the parties, and that the moving party is entitled to a judgment as a matter of law. See Fla. R. Civ. P. 1.510(c); Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966). "The proof must be such as to overcome all reasonable inferences which may be drawn in favor of the opposing party." Holl, 191 So.2d at 43. Since the correctness of summary judgment is a question of law, the granting of such by the trial court is reviewed de novo by this court. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
Section 193.461 states in pertinent part:
(1) The property appraiser shall, on an annual basis, classify for assessment purposes all lands within the county as either agricultural or nonagricultural.
. . .
(3)(b) Subject to the restrictions set out in this section, only lands which are used primarily for bona fide agricultural purposes shall be classified agricultural. "Bona fide agricultural purposes" means good faith commercial agricultural use of the land....
. . .
(5) For the purposes of this section, "agricultural purposes" includes, but is not limited to, horticulture; floriculture; viticulture; forestry; dairy; livestock; poultry; bee; pisciculture, when the land is used principally for the production of tropical fish; aquaculture; sod farming; and all forms of farm products and farm production.
(Emphasis added).
PPI argues that horses fit within the statutory category of "livestock." The statute does not explicitly define the term. To decide this case we must construe the term "livestock" as it is used in section 193.461(5).
The meaning behind the legislature's use of the term "livestock" must be determined primarily from the language of the statute. See Fla. Convalescent Ctrs. v. Somberg, 840 So.2d 998, 1000 (Fla.2003). "[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Id. (citations omitted).
*925 "Livestock" is a word with a "clear and definite" meaning: "the horses, cattle, sheep and other useful animals kept or raised on a farm or ranch." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 839 (1967). Another definition is "[d]omestic animals, such as cattle, or horses, raised for ... profit, esp. on a farm." AMERICAN HERITAGE COLLEGE DICTIONARY 794 (3d.1993); WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 699 (1984). The boarding, training, and development of horses on the property here at issue fits within the common meaning of livestock.
Because we find no ambiguity in the term "livestock," it is not proper to resort to principles of statutory construction to ascertain legislative intent. See Somberg, 840 So.2d at 1000. We are aware of the rule that "[w]hile doubtful language in taxing statutes should be resolved in favor of the taxpayer, the reverse is applicable in the construction of exceptions and exemptions from taxation." Robbins v. Yusem, 559 So.2d 1185, 1187-88 (Fla. 3d DCA 1990) (quoting United States Gypsum Co. v. Green, 110 So.2d 409, 413 (Fla. 1959)), disapproved of on other grounds, Schultz v. Love PGI Partners, L.P., 731 So.2d 1270 (Fla.1999) (emphasis added); see also St. Petersburg Kennel Club, Inc. v. Smith, 662 So.2d 1270, 1271 (Fla. 2d DCA 1995) (finding that a court must strictly construe agricultural classification statute against taxpayer since it results in a more favorable tax assessment). However, the rule is inapplicable to construe language of a statute that is not doubtful.
Our interpretation of the term "livestock" is consistent with the role of the "exemption in the statutory structure." See In re Erickson, 815 F.2d 1090, 1094 (7th Cir.1987). The purpose of the exemption is to encourage agricultural use of land by lessening the burden of taxation. The legislature has placed a value on agricultural use. Boarding, training, and developing horses is a use of property consistent with the purpose of the statute.
Our decision is also consistent with Aitken v. Markham, 595 So.2d 159 (Fla. 4th DCA 1992). There, we held that where the primary use of land is breeding horses for profit, the landowner qualified for an agricultural classification under section 193.461. Comparing the actual use of the land in Aitken to the use in this case, we find no meaningful distinction that would support a different result here.
Recently, the third district decided a similar case. Robbins v. Racetrack Training Center, Inc., 833 So.2d 306 (Fla. 3d DCA 2003), presents the same general fact situation as this case; it involves a property owner that boarded and trained thoroughbred racing horses adjacent to Calder Race Course. The property owner obtained an agricultural classification of its property to receive favorable tax treatment. The third district affirmed the trial court's grant of summary judgment to the property owner, holding that the boarding and training of racing horses was for a bona fide agricultural purpose within the meaning of section 193.461(3)(b).
We agree with the third district's conclusion that the phrase "all forms of farm products and farm production" contained in section 193.461(5) "is not meant to be a limiting phrase but rather a catch-all" and that the term "livestock" should be given its plain meaning. Robbins, 833 So.2d at 309.
The property appraiser argues that the correct application of the exemption is to apply it only to farm activities that create an agricultural product. However, to reach that result, we would have to *926 aggressively manipulate the plain meaning of the term "livestock" by the application of rules of interpretation. It is for the legislature to shape exemptions from taxation, not for a court to depart from plain meaning to write tax policy.
AFFIRMED.
STONE, J. and STERN, KENNETH D., Associate Judge, concur.
NOTES
[1] PPI dropped its request seeking an agricultural classification for the forty acres comprised of its main racing track.