900 So.2d 683 (2005)
Lori PARRISH, as Broward County Property Appraiser, Appellant,
v.
PIER CLUB APARTMENTS, LLC, a Florida limited liability company, and Joseph Rosenhagen, as Tax Collector for Broward County, Florida, Appellees.
No. 4D03-2458.
District Court of Appeal of Florida, Fourth District.
April 20, 2005.
Gregory Durden of Gregory Durden, P.A., Fort Lauderdale, for appellant.
Jerold I. Budney, Kenneth A. Horky and John L. McManus of Greenberg Traurig, P.A., Fort Lauderdale, for appellee Pier Club Apartments, LLC, etc.
STEVENSON, J.
The issue in this appeal is whether Pier Club Apartments, LLC, was entitled to an affordable housing tax exemption on apartment units that were vacant on January 1st, but which were occupied by low or very low income tenants in the preceding year. Under the particular facts present here, we answer this question in the negative and reverse the order appealed.

The Proceedings Below
In June 1999, Pier Club Apartments, LLC ("Pier Club") purchased a 480-unit apartment complex that provides affordable housing to low and very low income tenants. Pier Club's sole shareholder was a not-for-profit corporation and the purchase was financed through public housing revenue bonds. As a condition of such funding, Pier Club entered into a Land Use Restriction Agreement (LURA) with the Housing Finance Authority of Broward County. The LURA required that, by June 1, 2000, 20% of the units would be occupied by very low income tenants and an additional 55% by low income tenants. *684 The remaining 25% were available for rent to the general public.
In February 2000, Pier Club applied for an affordable housing exemption from ad valorem taxation pursuant to section 196.1978, Florida Statutes (2000). The statute provides that property that is (1) owned by certain types of qualified non-profit entities and (2) used to provide affordable housing for certain statutorily defined "eligible persons"
shall be considered property owned by an exempt entity and used for a charitable purpose, and those portions of the affordable housing property which provide housing to individuals with incomes as defined in s. 420.0004(9) and (14) shall be exempt from ad valorem taxation. . . .
When the property appraiser failed to advise Pier Club of its decision by the July 1st deadline set forth in section 196.193(5), Florida Statutes, Pier Club filed a petition for writ of mandamus.
Nearly simultaneous with service of the petition, Pier Club received a letter denying its application for exemption. The denial prompted Pier Club to amend its petition. Count I was styled a "statutory cause of action to contest the denial of ad valorem tax exemption." Count II sought a declaration that the property appraiser was in violation of section 196.193(5) for failing to either grant or deny the exemption by July 1st and that Pier Club was, in fact, entitled to the section 196.1978 exemption. The property appraiser took the position that the 2000 amendments to section 196.1978 were unconstitutional as they had been enacted in violation of the single subject rule. Alternatively, the property appraiser insisted Pier Club did not qualify for the exemption.
In or around February 2002, the parties reached a settlement, resolving the majority of the issues. The parties agreed Pier Club would receive a tax exemption for all units in which a low or very low income tenant resided on January 1, 2000approximately 57% of the 480 units. The parties were unable to agree, however, on the tax exempt status of those units that were vacant on January 1, 2000, and this issue was reserved for trial.
Pier Club took the position that if a unit was previously occupied by a low or very low income tenant but vacant on January 1st, it was nonetheless entitled to section 196.1978's exemption. The property appraiser, on the other hand, insisted that January 1st was the only relevant date and that if the property was not occupied by a low or very low income tenant on January 1st, then the property was not being "used" to provide affordable housing. The trial court sided with Pier Club, ruling that "the apartments, designated as and occupied by low or very low income tenants, as defined by Florida Statute 420.0004(9), in the tax year prior to January 1, 2000, but were vacant on January 1, 2000 retain that designation and are still entitled to an ad valorem tax exemption." We cannot agree.

General Principles Regarding Ad Valorem Taxation
Before addressing the specifics of the trial court's ruling and the arguments raised, it is helpful to set forth some general principles regarding ad valorem taxation and the language of section 196.1978. First, "[u]nless expressly exempted" all real property in the state is subject to taxation. § 196.001(1), Fla. Stat. (2004).[1] Second, by statute, real property is assessed "according to its just value" on January 1st of each year. § 192.042(1), *685 Fla. Stat. Third, "[e]very person or organization who, on January 1, has the legal title to real or personal property . . . shall, on or before March 1 of each year, file an application for exemption . . . ." § 196.011(1)(a), Fla. Stat. The failure to apply for the exemption by March 1 generally waives the exemption for that year. Id. Fourth, statutes providing for an exemption from ad valorem tax are to be strictly construed, see Dade County Taxing Auths. v. Cedars of Lebanon Hosp. Corp., 355 So.2d 1202, 1205 (Fla.1978), and any ambiguity is to be resolved against the taxpayer and against exemption, see Markham v. PPI, Inc., 843 So.2d 922, 925 (Fla. 4th DCA 2003). "The burden is on the claimant to show clearly any entitlement to tax exemption." Volusia County v. Daytona Beach Racing & Recreational Facilities Dist., 341 So.2d 498, 502 (Fla.1976).

The Language of Section 196.1978
Since all real property is subject to ad valorem taxation unless exempted, any analysis of this issue must begin with the language of the statute authorizing the exemption. Section 196.1978 reads in relevant part:
Property used to provide affordable housing serving eligible persons . . . shall be considered property owned by an exempt entity and used for a charitable purpose, and those portions of the affordable housing property which provide housing to individuals with incomes as defined in s. 420.0004(9) and (14) shall be exempt from ad valorem taxation to the extent authorized in s. 196.196. (emphasis added).
Since the parties agreed that 57% of the property's tenants were low and very low income, the Pier Club apartments as a whole must be considered as "used for a charitable purpose." However, only "those portions of the affordable housing property which provide housing to individuals with . . . [low income] and . . . [very low income]" are entitled to exemption from ad valorem taxation. The critical question, then, is whether actual occupancy by a low or very low income tenant on January 1st is required for a unit to be considered a "portion" of the property "which provide[s] housing" to low and very low income individuals.

Actual Occupancy on January 1st

1. The meaning of the word "provide"
Pier Club suggests that the answer to this question is "no," relying upon the dictionary definition of the word "provide." According to Pier Club, since the word "provide" means "to make available," see Webster's Ninth New Collegiate Dictionary 948 (9th ed.1988), section 196.1978's exemption applies to "the portions of the affordable housing property . . . most recently leased to qualified low and very low income tenants," whether or not occupied on January 1 since it is "making those units available to such qualified tenants on January 1." While we do not take issue with Pier Club's definition of the word "provide," we cannot agree that, when applied here, actual occupancy of the unit by a low or very low income tenant on January 1st is not necessary to trigger the exemption.
First, a vacant unit can hardly be said to be providing housing to anyonelow income or otherwise. Second, if the legislature had intended the exemption to apply to any unit that had been utilized to provide housing for low income individuals, it certainly could have written the statute to state that those portions which provide or have provided low or very low income housing are exempt.
Third, despite Pier Club's assertion to the contrary, the evidence in the record *686 before us is insufficient to support a finding that units which were vacant on January 1, but once occupied by low or very low income tenants, will necessarily be made available to low or very low income tenants. The LURA required Pier Club to rent 75% (or 360) of its 480 units to low and very low income tenants by June 1, 2000. According to the parties' settlement, as of January 1, 2000, 272 units were actually occupied by low and very low income tenants. Thus, to meet its 75% requirement, Pier Club was required to lease an additional 88 units to low or very low income tenants by June 1, 2000. There was, however, no evidence regarding the status of the remaining 208 units (480-272 occupied by low/very low income tenants) that were not leased to low or very low income tenants on January 1st. For example, if 120 of the remaining 208 units were already leased to individuals other than low and very low income tenants, then Pier Club would have to rent any units that were vacant on January 1st to low and very low income tenants in order to satisfy its obligations under the LURA. On the other hand, if only 100 of the 208 remaining units were presently leased to tenants other than those with low and very low incomes, then Pier Club has 108 available units, only 88 of which must be leased to low income individuals.

2. Section 196.1978's Internal References
Next, Pier Club contends that any ambiguity as to whether the unit must actually be occupied by a low or very low income tenant on January 1st to qualify for the exemption is resolved by section 196.1978's internal references to sections 159.603(7); 420.0004(9), (10), (14); 196.196, and to Revenue Procedure 96-32. We cannot agree that any of these references shed light on whether section 196.1978 requires actual occupancy on January 1st. We likewise find the statute's legislative history to be of no help. The only thing the legislative history makes clear is that our legislature did not intend for the affordable housing exemption to be available to only those property owners providing affordable housing under federal programs; rather, it intended the exemption to be available to those providing affordable housing under federal, state, and local programs. See CS/CS/HB 17, House of Representatives as Further Revised by the Committee on Water & Resource Management Analysis, at 5 (Apr. 8, 1999); HB 2261, House of Representatives Committee on Community Affairs Analysis, at 14 (Apr. 4, 2000); HB 2261, House of Representatives as Revised by the Committee on Transportation & Economic Development Appropriations Analysis, at 14 (Apr. 10, 2000).

3. The LURA & Florida Administrative Code Rule 67-36.006
Pier Club points to the language of the LURA and Florida Administrative Code Rule 67-36.006 to support its contention that section 196.1978 does not require actual occupancy on January 1st. Projects, like Pier Club, financed through public housing revenue bonds require that certain portions of the property be set aside for low income tenants and that the property owner certify compliance with these set aside requirements. See Fla. Admin. Code R. 67-36.006.[2] To this end, subsection (7) of rule 67-36.006 provides that "if a unit is vacated by an individual or family who qualified as a Low-Income Tenant, such unit shall be treated as occupied by a Low-Income Tenant until reoccupied. . . ." Pier Club's LURA similarly requires that 75% of the units be "continuously occupied or held open for occupancy" by low income *687 tenants and that Pier Club annually certify its compliance with this requirement. For purposes of this annual reporting requirement, the LURA mirrors rule 67-36.006, specifying that "a unit that was occupied by a Lower-Income Tenant (or Eligible Person) shall be counted as occupied by a Lower-Income Tenant (or Eligible Person) until it is reoccupied other than for a temporary period not exceeding 60 days. . . ."
According to Pier Club, the language of the LURA and rule 67-36.006 compel a conclusion that units which were previously occupied by a low or very low income tenant, but which are vacant on January 1st are exempt from ad valorem taxation. It is true that where a statute is ambiguous, the "interpretation given the statute by the agency charged with its enforcement is entitled to great deference and should not be overturned unless it is clearly erroneous." Fla. Dep't of Educ. v. Cooper, 858 So.2d 394, 396 (Fla. 1st DCA 2003). Here, though, it is the Department of Revenuenot the Housing Finance Authority of Broward Countythat is charged with overseeing the assessment of ad valorem taxes. See § 195.002(2), Fla. Stat. (2003). The only evidence offered below regarding the Department of Revenue's position on the matter was the affidavit of a Florida Department of Revenue employee attesting that the tax status of real property is determined on January 1st, that the relevant inquiry is whether the property is being used for exempt purposes on January 1st, and that the employee is unaware of any exceptions for low income housing.

Florida's "Actual Use" Doctrine
The law in Florida has long been that January 1st is the critical day for ad valorem taxation on real property and it is the property's actual use on that day that is dispositive of its tax treatment. See Dade County Taxing Auths. v. Cedars of Lebanon Hosp. Corp., 355 So.2d 1202 (Fla.1978)(holding hospital not entitled to exemption for newly constructed patient care center for 1974 tax year because, while building was complete, as of January 1st no patient had yet been admitted and, in fact, premises were occasionally rented to businessmen); Lake Worth Towers, Inc. v. Gerstung, 262 So.2d 1 (Fla.1972)(stating property not entitled to exemption that applied to homes for the aged for 1968 tax year where the building was not complete until March); Lanier v. Overstreet, 175 So.2d 521, 523-24 (Fla.1965)("In this state, the ad valorem tax on real and personal property accrues as of January 1st of the tax year . . . . The character of a particular parcel . . . is determined as of January 1st and continues throughout the tax year regardless of any change in its character during that year."). Pier Club embraces the "actual use" doctrine, but argues that it is appropriate to look to the unit's past usethe provision of housing to low and very low income tenantsto determine the "actual use" of units vacant on January 1st and, thus, their tax exempt status. In support of its position, Pier Club relies upon Trinity Episcopal School, Inc. v. Robbins, 605 So.2d 880 (Fla. 3d DCA 1992), and Grady v. Hausman, 509 So.2d 1316 (Fla. 5th DCA 1987). We do not believe either of these cases supports a conclusion that if apartment units were occupied by low or very low income tenants prior to January 1st, but are not occupied by low or very low income tenants on January 1st, then the pre-January 1st use somehow carries over to January 1st, rendering the apartment units still exempt from ad valorem taxation.
In Trinity Episcopal, the school purchased an undeveloped ten-acre parcel of land. By January 1, 1988, the school had used the vacant parcel to conduct classes *688 on topography and sporadically for club meetings. The school applied an educational institution exemption for the ten-acre parcel in 1988. The exemption was denied and, ultimately, the Third District held that such denial was in error because the only use to which the school had put the property was educational. In reaching its conclusion, the panel wrote "[h]ere, the School used the property from a date prior to January 1, 1988 for environmental or nature studies." 605 So.2d at 882. Pier Club seizes on the language referring to the time frame prior to January 1988 to suggest that it is appropriate to look to the property's use prior to January 1st to determine if the property qualifies for exemption on January 1st. We do not believe this is a fair reading of the case. There, the only usewhether pre or post January 1stthat the land had been put to was education. The court was not addressing a case where the circumstances were different pre and post January 1st.
Grady is analogous to Trinity Episcopal. There, a church sought a religious purposes exemption for a 17-acre, undeveloped parcel. Part of the parcel was used for recreational purposes and part as an overflow parking lot. The property appraiser denied the religious purposes exemption because there were no physical improvements on the land. The trial court, on the other hand, found that only the portion which "acted as a buffer area to the rectory in providing a place for meditation" was exempt since the recreational use of the remainder was merely incidental. The Fifth District reversed, holding that the lack of physical improvements was not dispositive, that the physical characteristics and usage of each portion of the property were the same, and that "[a] review of the record indicates that from a time prior to January 1, 1985, the disputed property has been continuously and exclusively used as a parish site for parish related activities." 509 So.2d at 1320. As in Trinity Episcopal, the court was not considering circumstances where the pre-January 1st use of the land and the January 1st use of the land were at variance.

Conclusion
Having found that the plain language of section 196.1978, the statute's internal references and legislative history, the LURA, and Florida's actual use doctrine do not address whether actual occupancy by a low or very low income tenant on January 1st is required to trigger the tax exemption, we find ourselves where we beganwith the general principles governing ad valorem taxation. Under such principles, all real property in the state is subject to taxation "[u]nless expressly exempted," see section 196.001(1), Florida Statutes, and statutes providing for an exemption are to be strictly construed with any ambiguity resolved against the taxpayer and against exemption. See Cedars of Lebanon Hosp., 355 So.2d at 1205; Markham, 843 So.2d at 925. These principles require us to hold that occupancy by a low or very low income tenant on January 1st is necessary to trigger the affordable housing exemption set forth in section 196.1978. Consequently, we reverse the order appealed.
REVERSED and REMANDED.
GUNTHER and TAYLOR, JJ., concur.
NOTES
[1] The language of the 2000 version of the relevant statutes in effect at the time Pier Club sought its tax exemption and the language of the present version is identical.
[2] Effective June 8, 2004, Rule 67-36.006 was repealed.